Argued and submitted May 4, 1992, reassigned August 10, decision of the Court of Appeals and the judgment of the circuit court affirmed August 19, 1993

# HUFFMAN AND WRIGHT LOGGING CO.,
an Oregon Corporation,
*Respondent on Review,*

*v.*

## Valerie J. WADE,
Michele D. Miller, Karen V. Wood,
Kelpie J. Wilson, Kamala Redd
and James R. Jackson,
*Petitioners on Review.*

(CC L87-2850; CA A61324; SC S38633)

857 P2d 101

Bruce E. Smith, Eugene, argued the cause for petitioners on review. On the petition was David E. Atkin, Eugene.

Mark C. Rutzick, of Preston, Thorgrimson, Shidler, Gates & Ellis, Eugene, argued the cause for respondent on review. With him on the response briefs was Cynthia Lombardi.

Bruce Smith, Gregory E. Skillman, Ellen D. Adler, and Nickolas Facaros, Eugene, filed a brief for *amicus curiae* American Civil Liberties Union Foundation of Oregon, Inc.

Harlan Edward Jones, of Bolliger, Hampton & Tarlow, Portland, filed a brief for *amicus curiae* Lovejoy Surgicenter, Inc.

GRABER, J.

Unis, J., filed a dissenting opinion in which Van Hoomissen, J., joined.

## GRABER, J.

In an action for trespass to chattels, the jury awarded compensatory and punitive damages to plaintiff. Defendants concede their liability for trespass and for compensatory damages, but argue that Article I, sections 8 and 26, of the Oregon Constitution,[1] and the First and Fourteenth Amendments to the Constitution of the United States[2] prohibit an award of punitive damages against them, because their trespassory conduct was "expressive" political speech designed to change government policies. The Court of Appeals affirmed the judgment for punitive damages. *Huffman and Wright Logging Co. v. Wade*, 109 Or App 37, 817 Pd 1334 (1991). We also affirm.

The material facts are not disputed. Plaintiff is a private corporation that operates a logging business. Defendants are six members of "Earth First!" In July 1987, defendants participated in a demonstration on a United States Forest Service logging road in the North Kalmiopsis area of the Siskiyou National Forest. The demonstration was organized to protest Forest Service policies regarding the area. During the demonstration, five of the six defendants climbed on, and chained themselves to, plaintiff's logging equipment. The sixth defendant climbed to the top of a yarder belonging to plaintiff and hung a large banner that read: "FROM HERITAGE TO SAWDUST - EARTH FIRST!" The banner also depicted two trees being turned into sawdust. While

---

[1] Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article I, section 26, provides:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances [*sic*]."

[2] The First Amendment provides in part:

"Congress shall make no law * * * abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The First Amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *New York Times Co. v. Sullivan*, 376 US 254, 264 n 4, 84 S Ct 710, 11 L Ed 2d 686 (1964).

defendants were attached to the equipment, they made statements, sang songs, and chanted slogans relating to their beliefs about the need for greater environmental protection of the North Kalmiopsis area. The demonstration was widely publicized.

Defendants did not have permission to be on, or otherwise to interfere with the use of, plaintiff's personal property, and they knew that they did not. Defendants' actions caused part of plaintiff's logging operation to be suspended for most of a day.

Defendants were arrested and charged with criminal mischief in the third degree, ORS 164.345.[3] After a trial to the court on stipulated facts, defendants were convicted. Each defendant served two weeks in jail, and each was ordered to pay a $250 fine and to make full restitution to plaintiff for its lost revenues resulting from defendants' actions.

Plaintiff then filed this civil action against defendants. As material here, the complaint alleged that defendants committed a trespass by "intentionally and wrongfully interfering with and depriving Plaintiff of the use and possession of [its] logging equipment." Plaintiff sought compensatory damages for lost revenues in the amount of $7,818.26, plus punitive damages of $50,000.

Defendants conceded liability for compensatory damages (although they disputed the amount). As an affirmative defense to the claim for punitive damages, they asserted that Article I, sections 8 and 26, of the Oregon Constitution, and the First and Fourteenth Amendments to the Constitution of the United States precluded the imposition of punitive damages for their actions. On the same ground, defendants later moved for partial summary judgment and for a directed verdict. The trial court denied each motion and submitted plaintiff's claim for punitive damages to the jury. Defendants did not request an instruction that would have limited the

---

[3] ORS 164.345 provides:

"(1) A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that the person has such right, the person tampers or interferes with property of another.

"(2) Criminal mischief in the third degree is a Class C misdemeanor."

jury's consideration to punitive damages based on non-expressive conduct. The jury returned a verdict in plaintiff's favor, awarding $5,717.34 in compensatory damages and $25,000 in punitive damages. Defendants moved for judgment notwithstanding the verdict on the claim for punitive damages, continuing to assert the same constitutional theories. The trial court denied that motion and entered judgment for plaintiff.

Defendants appealed, raising two assignments of error. The first related to defendants' argument that punitive damages are constitutionally barred in this case. The second related to the admission of certain evidence. The Court of Appeals considered both assignments of error and affirmed. *Huffman and Wright Logging Co. v. Wade, supra.* Defendants sought review only with respect to the constitutionality of the award of punitive damages, and we allowed their petition.[4]

Defendants contend that, as a matter of law, no punitive damages are recoverable, because *all* their activity was "expressive conduct" protected from an award of punitive damages by the state and federal constitutions. Defendants make no particularized argument that any one segment of their activity was separately immune from an award of punitive damages. Accordingly, our inquiry is whether *any* of defendants' activities constitutionally could support an award of punitive damages. If any of their activities could do so, then the trial court did not err in allowing the issue of punitive damages to go to the jury and in refusing to disturb the jury's verdict.

## ARTICLE I, SECTION 8

■ The jury awarded compensatory and punitive damages for trespass to chattels. From the evidence presented, the jury could have found that the acts of trespass were defendants' climbing on plaintiff's logging equipment, chaining themselves to it, affixing an object to it, and rendering the equipment inoperable during that time. Although those acts undoubtedly had a communicative effect, in the sense that

---

[4] *Amicus curiae* American Civil Liberties Union Foundation of Oregon, Inc., discusses the evidentiary issue in its brief to this court. We do not consider the evidentiary issue, because defendants did not seek review of it.

most purposive human activity communicates something about the frame of mind of the actor, the acts were conduct, not speech.[5] The question becomes, then, whether defendants are nonetheless constitutionally immune from potential responsibility for punitive damages because of the message that their conduct assertedly was trying to convey, the reason for their conduct, or the fact that speech accompanied their conduct.

■  Two lines of cases from this court demonstrate that the answer under Article I, section 8, is "no." The first line of cases, beginning with *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), evaluates whether various criminal laws violate Article I, section 8.[6] In the second line of cases, beginning with *Wheeler v. Green*, 286 Or 99, 593 P2d 777 (1979), this court has addressed directly the availability, under Article I, section 8, of punitive damages for various torts involving speech.

■  Although the two lines of cases have developed independently, an examination of their methodologies and rationales discloses their fundamental interrelatedness. The imposition of punitive damages is akin to the imposition of criminal responsibility because, where punitive damages "beyond any actual injury are allowable, the plaintiff collects them as a form of public punishment." *Hall v. The May Dept. Stores*, 292 Or 131, 146, 637 P2d 126 (1981).[7] *See also* ORS 18.540 (a portion of award of punitive damages goes to the state); *Oberg v. Honda Motor Co.*, 316 Or 263, 281-83, 851

[5] In this opinion, we use the terms "speech" and "expression" interchangeably to refer to "the free expression of opinion, or * * * the right to speak, write, or print freely on any subject whatever" provided in Article I, section 8, of the Oregon Constitution.

[6] The same analytic construct applies under Article I, section 8, to laws that regulate but do not criminalize speech. *See, e.g., Moser v. Frohnmayer*, 315 Or 372, 845 P2d 1284 (1993) (applying the *Robertson* analysis to hold unconstitutional a law regulating commercial telephone solicitation).

[7] To the extent that punitive civil damages exist, not only to punish conduct, but also to deter others from similar acts, *Wheeler v. Green*, 286 Or 99, 118, 593 P2d 777 (1979), they are a form of indirect regulation, also amenable to the *Robertson* analysis. *See* note 6, *ante. Compensatory* civil liability for intentionally tortious conduct is not, however, within that same analytic construct, because Article I, section 10, of the Oregon Constitution, separately guarantees a "remedy by due course of law for injury" to "person, property, or reputation." *See Wheeler v. Green, supra*, 286 Or at 118-19 (construing Article I, sections 8 and 10, together to permit damages in a defamation action for compensatory but not punitive damages).

P2d 1084 (1993) (punitive damages are allowable to punish a wrongdoer). We also note that, although cases involving intentional torts usually hinge on common-law rules rather than on statutes, those common-law rules likewise are enforced by courts.

Turning to the first line of cases, this court's most recent discussion of the method of analyzing a criminal law under Article I, section 8, is found in *State v. Plowman*, 314 Or 157, 838 P2d 558 (1992). There, the court summarized the applicable principles derived from *State v. Robertson, supra*:

"In *State v. Robertson, supra*, this court established a framework for evaluating whether a law violates Article I, section 8. First, the court recognized a distinction between laws that focus on the *content* of speech or writing and laws that focus on the pursuit or accomplishment of *forbidden results*. 293 Or at 416-17. The court reasoned that a law of the former type, a law 'written in terms directed to the substance of any "opinion" or any "subject" of communication,' violates Article I, section 8,

" 'unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach.' *Id.* at 412.

"Laws of the latter type, which focus on forbidden results, can be divided further into two categories. The first category focuses on forbidden effects, but expressly prohibits expression used to achieve those effects. The coercion law at issue in *Robertson* was of that category. *Id.* at 417-18. Such laws are analyzed for overbreadth:

" 'When the proscribed means include speech or writing, however, even a law written to focus on a forbidden effect * * * must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such 'overbreadth.' *Ibid.*

"The second kind of law also focuses on forbidden effects, but without referring to expression at all. Of that category, this court wrote:

" 'If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert (apart from

a vagueness claim) that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to Article I, section 8.' *Id.* at 417." *State v. Plowman, supra,* 314 Or at 163-64 (emphasis in original; footnote omitted).

Applying those principles, this court held that ORS 166.165(1)(a)(A)[8] is a law in the third of the described categories and is not facially invalid under Article I, section 8. *Id.* at 167.

■■  *State v. Plowman, supra,* contains two other pertinent lessons. The first is that a person's *reason for engaging in punishable conduct* does not transform conduct into expression under Article I, section 8. *See id.* at 165 (intimidation statute proscribes and punishes committing an act, not holding a belief, even though the defendants may have committed the act because they held a belief). The second lesson is that *speech accompanying punishable conduct* does not transform conduct into expression under Article I, section 8. *See id.* at 167 (words can be used as evidence to prove a crime, without making words the crime itself or an element thereof).[9]

The three categories of laws recognized by *Robertson* — (1) laws that are written in terms directed to the substance of an opinion or subject of communication, (2) laws that focus on forbidden effects but expressly prohibit expression to achieve those effects, and (3) laws that focus on forbidden effects and do not refer to expression at all — will become central to an understanding of the analysis for punitive damages liability set out below.

Without expressly using the same analysis as *Robertson*, this court has addressed the availability, under Article I, section 8, of punitive damages for intentional torts involving

---

[8] ORS 166.165(1)(a)(A) makes it a crime for two or more persons, acting together, to "[i]ntentionally, knowingly, or recklessly cause physical injury to another because of their perception of that person's race, color, religion, national origin or sexual orientation."

[9] An armed robber cannot escape responsibility for his or her conduct by pointing out that "stick 'em up" is speech or by reciting the Gettysburg address during the robbery. Nor will giving to the destitute all money that the robber obtains at the point of a gun excuse the crime.

speech. The results in the punitive damages cases neverthe-less are analogous to, and consistent with, the *Robertson* line of cases.

The first of the decisions involving punitive damages was *Wheeler v. Green, supra.* In *Wheeler,* the plaintiff sued the defendants for defamation. The jury awarded both com-pensatory and punitive damages. On appeal, this court held that the plaintiff could not obtain punitive damages for defamation. The court recognized that defamatory state-ments are "an abuse of the right of free expression for which a person is to be held responsible under the provisions of Article I, § 8." 286 Or at 118. Nonetheless, the court limited a defendant's "responsibility" in a defamation case to compen-satory damages. *Id.* at 118-19. In reaching that result, the court expressed concern that, "[i]n the sensitive area of free expression, * * * the threat of large damage recoveries can easily inhibit the exercise of constitutionally protected expression, as well as its abuse." *Id.* at 119.

The content of speech or writing is an element of the tort of defamation:

> "an action for libel must be predicated upon 'written' words, which includes any printed, painted or other nontransient method of conveying a thought; the action of slander dis-penses with the necessity for the 'writing.' * * *
>
> "* * * * *
>
> "* * * [T]he plaintiff has stated a cause of action if the [defendant's written or spoken communication to another] subjects [the plaintiff] to public hatred, contempt or ridi-cule." *Reiman v. Pac. Devel. Society,* 132 Or 82, 86-89, 284 P 575 (1930) (citation omitted).

*See also Bank of Oregon v. Independent News,* 298 Or 434, 437, 693 P2d 35 (1985) (describing elements of defamation claim and categories of affirmative defenses that are avail-able). The tort of defamation is, in that sense, analogous to the first category of laws described in *State v. Robertson, supra,* laws that are written in terms directed to the sub-stance of an opinion or subject of communication.

The next case in which this court confronted the impact of Article I, section 8, on the availability of punitive damages involved an intentional tort other than defamation.

In *Hall v. The May Dept. Stores, supra*, the plaintiff sued her employer for intentional infliction of severe emotional distress for statements made to her in a one-on-one interrogation by a store security officer. She received compensatory and punitive damages. Relying on *Wheeler v. Green, supra*, the court struck the award of punitive damages. *Hall* considered the differences between the torts of defamation and intentional infliction of severe emotional distress and concluded that punitive damages would have been permitted had the employer committed the tort by "any conduct other than" speech:

> "Plaintiff seeks to distinguish the rule of *Wheeler v. Green* because 'speech is the gravamen of the tort of defamation,' whereas, according to plaintiff's argument, [the security officer's] speech in this case was only incidental to the tort of intentional infliction of severe emotional distress. The distinction would have weight if the tort in this case rested on any conduct other than [the security officer's] accusations to plaintiff in the course of his interrogation. Of course infliction of emotional distress, unlike defamation, can be committed by other means than expression or communication. But in this case we have found no other conduct that could qualify as this tort." *Hall v. The May Dept. Stores, supra*, 292 Or at 146-47 (citation omitted).

*Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 733 P2d 430 (1987), elaborated on the distinction, identified in *Hall*, between conduct and speech. In *Lewis*, the plaintiff sought general and punitive damages for intentional interference with an economic relationship. She had refused to date a warehouse supervisor, who reacted in a hostile manner that included a mix of both conduct and speech:

> "[The supervisor] exhibited his hostility towards plaintiff in the workplace. He 'glared' at her from outside her office and told other employes that she had given him a venereal disease. He swore at her, called her a whore, searched her personal belongings and threw things at her. He refused to cooperate with her when she required information necessary to function in her job and would 'fling' merchandise and paperwork into her office. On one occasion he intentionally slammed a door which hit plaintiff. He also told other employes that plaintiff would not be working at [the warehouse] much longer." 302 Or at 618.

The plaintiff left her employment and sued her former employer and the supervisor. This court upheld the jury's award of punitive damages against the supervisor, because the supervisor's "non-expressive" conduct provided a constitutionally permissible basis for them.

> "[The supervisor] did not request an instruction that would have required the jury to separate expression from noncommunicative conduct in its determination of punitive damages. He considered all his acts privileged expression exempt from a punitive damages award. It is obvious, however, that some of his acts, such as searching plaintiff's property and intentionally slamming the door into her, are non-expressive conduct for which punitive damages could properly be awarded. Because [the supervisor] failed to ask for a punitive damages instruction limiting the jury's consideration to non-expressive conduct, we uphold the punitive damages award." 302 Or at 629.

■ The content of speech is not an element of the torts involved in *Hall* and *Lewis* — the torts of intentional infliction of severe emotional distress and intentional interference with an economic relationship. However, those torts readily can be committed by speech, as well as by conduct, or by a combination of the two:

> "To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. * * *
>
> "* * * * *
>
> "* * * To state a claim for intentional interference with contractual relations, a plaintiff must plead that the defendant, either with an improper objective or through improper means, purposefully interfered with the plaintiff's contractual relationship with some third party, thereby causing the plaintiff damage." *Sheets v. Knight*, 308 Or 220, 236-37, 779 P2d 1000 (1989).

Because the intentional torts analyzed in *Hall* and *Lewis* do not contain speech as an element but readily can be committed, in whole or in part, by speech, those torts are analogous to laws in the second *Robertson* category, laws that focus on

forbidden effects but expressly prohibit expression to achieve those effects.

In the criminal law context, such laws must be narrowed so that they avoid punishing privileged communication. *State v. Plowman, supra,* 314 Or at 164; *State v. Robertson, supra,* 293 Or at 417-18. *Hall* and *Lewis* stand for an analogous proposition: In actions involving liability for intentional torts that permit liability for specified effects but that commonly are committed, at least in part, by speech, punitive damages are available only for those aspects of the tortfeasor's conduct that do not constitute privileged expression, and the court must give an appropriate limiting instruction if a defendant requests it.

So far, we have concluded that an analogy may be drawn between laws falling into the first *Robertson* category and intentional torts, such as defamation, that by definition permit liability for the content of speech, and that a similar analogy may be drawn between laws falling into the second *Robertson* category and intentional torts, such as intentional infliction of severe emotional distress, in which the content of speech is not an element but in which the specified harm may be caused by speech. We turn now to the question whether there also are some intentional torts that are analogous to laws in the third *Robertson* category, that is, intentional torts that permit liability for harm not caused by speech at all. We conclude that there are, indeed, some intentional torts that are concerned only with forbidden effects and that the tort that we consider in this case, trespass to chattels, is such a tort.

"In actions for trespass to personal property the gist of the action is the disturbance of the plaintiff's possession." *Swank v. Elwert,* 55 Or 487, 496, 105 P 901 (1910). That is, the tort of trespass to chattels focuses on the *effect* — the disturbance of the owner's possession. The content of speech is not an element of the tort. Moreover, this tort cannot readily be committed by speech, even if speech accompanies the trespass.

As demonstrated above, criminal responsibility may rest on a defendant who violates a law that is directed to forbidden effects and does not refer to expression at all,

without running afoul of Article I, section 8. So, too, responsibility for punitive damages may accompany an intentional tort — like the tort of trespass — that permits liability for harm not caused by speech. With respect to such a tort, liability for both compensatory and punitive damages rests on conduct. A defendant still may assert, however, that punitive damages cannot constitutionally be applied to the particular conduct involved. *See State v. Plowman, supra,* 314 Or at 163-67 (discussing a defendant's conduct analyzed under a criminal intimidation statute that falls into the third *Robertson* category). Where a defendant in a third-category tort action makes such an assertion, the defendant — like a defendant in a second-category tort case — may be entitled to a limiting instruction.

◼    In summary, having examined the two lines of cases and demonstrated their symmetry, we hold that the first step in determining the availability of punitive damages for an intentional tort is to put the common-law tort on the same footing as all other laws, *i.e.,* to place the tort in one of the three *Robertson* categories. *See City of Hillsboro v. Purcell,* 306 Or 547, 553, 761 P2d 510 (1988) ("The nature of the prohibition, either civil or criminal, is immaterial to the first sentence of Article I, section 8, which directs that 'no law' shall restrict or restrain speech, writing, [or] printing."). If a tort permits liability for the content of speech, punitive damages are not recoverable. *Wheeler v. Green, supra.*[10] If a tort permits liability for speech-caused harm, then a defendant who requests it is entitled to an instruction limiting the tortious predicate for punitive damages to conduct not protected by the free speech provision of Article I, section 8. *Lewis v. Oregon Beauty Supply Co., supra,* 302 Or at 629. If a tort permits liability for harm not caused by speech, but the defendant contends that Article I, section 8, prohibits an award of punitive damages for the particular conduct involved, then a defendant who requests it likewise may be entitled to a limiting instruction.

---

[10] In the context of analyzing a criminal law, *State v. Robertson, supra,* 293 Or at 412, noted an exception when "the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach."

We apply the foregoing principles to this case. As discussed above, the tort of trespass to chattels, which is the predicate for punitive damages here, falls within the third *Robertson* category. Defendants contend that their conduct was constitutionally protected expression, immune from liability for punitive damages. Because defendants did not seek a limiting instruction, however, they are left to argue in this court what they have argued throughout: that *all* their conduct was entitled to immunity from punitive damages.

Defendants acknowledge their trespassory conduct but argue that, because of the message that their conduct sought to convey, the reason for their conduct, and the speech that accompanied their conduct, their trespassory conduct should itself be deemed protected speech. They emphasize the passage in *Lewis v. Oregon Beauty Supply Co., supra,* that considered whether the defendant had engaged in any "non-expressive conduct for which punitive damages could properly be awarded." 302 Or at 629. Defendants argue that their activities in this case consisted of "expressive" conduct and that "expressive" conduct is protected by Article I, section 8.

Defendants' conduct consisted of several acts: climbing on plaintiff's logging equipment, chaining themselves to the equipment, affixing an object to one piece of logging equipment, and thereby disrupting plaintiff's use of its property. We conclude that the jury was entitled to find that defendants' acts caused the disturbance of plaintiff's possession of its personal property, wholly apart from any motivating opinion, underlying message, or accompanying speech. The trespassory acts were, therefore, "non-expressive conduct" within the meaning of *Lewis v. Oregon Beauty Supply Co., supra.* The message that defendants sought to convey by their conduct, the reason for their conduct, and the spoken and written words accompanying their conduct did not transform defendants' conduct into speech.

■■ Defendants also argue that, because there was evidence of both trespassory acts and speech, "it is extremely likely that the defendants were in fact punished by the jury for their politically unpopular views." Defendants' factual premise is speculative. Even if defendants are correct, however, the power to avoid being punished for any protected expression lay in their own hands. As this court's prior cases

demonstrate, Article I, section 8, of the Oregon Constitution, protects persons from punishment for their views or for their words, but it does not insulate tortious conduct from punitive damages merely because the tortious conduct is accompanied by the expression of views. Liability for defendants' conduct in this case could have been assessed independently of any accompanying expression of views. A properly instructed jury could have awarded punitive damages based on the predicate of defendants' trespassory conduct alone. Defendants did not choose to request a limiting instruction. Having failed to request such an instruction, defendants cannot prevail in their Article I, section 8, challenge to the award of punitive damages against them.

## ARTICLE I, SECTION 26

Defendants also rely on Article I, section 26, of the Oregon Constitution, which protects the rights to assemble peaceably and to petition the government, although they cite no supporting authority. We conclude that Article I, section 26, does not shield defendants from liability for punitive damages in this case.

First, with respect to the right to assemble peaceably, nothing in Article I, section 26, suggests that that right includes a right to disrupt possession of the private property of another, at least when, as here, the private property is not open to public use. *Compare Lloyd Corporation v. Whiffen*, 315 Or 500, 849 P2d 446 (1993) (recognizing a right to gather initiative-petition signatures in common areas of large public shopping centers, in a manner that does not interfere with commercial purposes, under Article IV, section 1, of the Oregon Constitution, the initiative and referendum provision).[11]

Second, with respect to the right to petition the government, defendants' trespassory acts were not themselves a petition to the government. The direct recipients of

---

[11] The result reached by the majority in the *Lloyd Corporation v. Whiffen* signature-gathering case hinges expressly on the unique history of the initiative right in Oregon and the fact that the property in question was open to broad public use. 315 Or at 509-15. By contrast, in this case, the right to assemble and petition the government for grievances is a common state and federal right, and the logging equipment in question is nothing like the common area of a large commercial shopping center.

the message accompanying defendants' acts were plaintiff and the news media. The intention ultimately to affect government policy is not sufficient, by itself, to invoke the protection of Article I, section 26.

Article I, section 26, does not bar the award of punitive damages against defendants in this case.

## FIRST AMENDMENT

■ Having rejected defendants' state constitutional arguments, we turn to their arguments under the federal constitution. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (explaining methodology). Defendants assert that the First Amendment to the Constitution of the United States protects them from an award of punitive damages in a case of this kind.

The Supreme Court of the United States recently reaffirmed the principle that " '[v]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact * * * are entitled to no constitutional protection.' " *Wisconsin v. Mitchell*, 508 US ___, 113 S Ct 2194, 2199, 124 L Ed 2d 436 (1993) (quoting with approval *Roberts v. United States Jaycees*, 468 US 609, 628, 104 S Ct 3244, 82 L Ed 2d 462 (1984)). The Court distinguished a law that is "explicitly directed at expression" from one that is "aimed at conduct unprotected by the First Amendment." 113 S Ct at 2201.

We already have held that the tort of trespass to chattels is aimed at conduct not protected by the free expression provision of the Oregon Constitution. The same conclusion obtains with respect to the First Amendment. In this case, defendants' conduct, although accompanied by expressive activity, produced a special cognizable harm (an interference with plaintiff's possessory interest in its property), distinct from any communicative impact. *See Adderly v. Florida*, 385 US 39, 47, 87 S Ct 242, 17 L Ed 2d 149 (1966) (Constitution of the United States did not prevent even-handed enforcement of a criminal trespass statute against demonstrators who refused to leave entrance of jail; "[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated").

In addition, the First Amendment does not apply to private property that is not devoted to public use. For an owner of private property to be subject to the proscriptions of the First Amendment, the property must "assume to some significant degree the functional attributes of public property devoted to public use." *Central Hardware Co. v. NLRB*, 407 US 539, 547, 92 S Ct 2238, 33 L Ed 2d 122 (1972). Devotion of private property to public use requires, at a minimum, the owner's invitation to the general public to enter the premises. *See Marsh v. Alabama*, 326 US 501, 506, 66 S Ct 276, 90 L Ed 265 (1946) ("The more an owner * * * opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it."). *See also Lloyd Corporation v. Whiffen, supra*, 315 Or at 510-11 (citing and agreeing with the above-quoted passage from *Marsh v. Alabama*). Nothing in the First Amendment cases of the Supreme Court suggests that a different rule applies to private personal property than to private real property; the former, like the latter, is not subject to the proscriptions of the First Amendment unless it is devoted to public use. Here, plaintiff did not invite members of the general public to climb on or chain themselves to its equipment or otherwise subject itself to the proscriptions of the First Amendment.

Finally, defendants rely on the assembly and petition clauses of the First Amendment. They argue that the imposition of punitive damages violates their federally protected rights to assemble and to petition the government. As noted, however, in the absence of evidence that the personal property in question is devoted to public use, the rights secured by the First Amendment do not include the right to disrupt possession of private property against the will of the owner — that is, do not authorize trespass. In addition, as we observed in discussing defendants' Article I, section 26, claim, defendants' acts did not constitute a petition to the government.

The First and Fourteenth Amendments do not preclude an award of punitive damages against defendants in this case.

## CONCLUSION

The jury's verdict awarding plaintiff $25,000 in punitive damages was permissible. The decision of the

Court of Appeals and the judgment of the circuit court are affirmed.

**UNIS, J.,** dissenting.

I respectfully dissent.

The issue in this case is whether it is permissible under Article I, section 8, of the Oregon Constitution to allow an award of punitive damages for tortious conduct and the amount of those punitive damages to be determined at least in part because of significant expressive conduct and political speech accompanying or intertwined with the tortious conduct. I would hold that it is not.

Six individual defendants were held liable by a jury for compensatory (actual) and punitive damages in an action for civil trespass to personal property. Defendants conceded their liability for trespass and for compensatory damages, but argued that Article I, sections 8[1] and 26,[2] of the Oregon Constitution and the First Amendment to the Constitution of the United States[3] preclude an award of punitive damages for their expressive conduct and political speech. The Court of Appeals affirmed the judgment of punitive damages for plaintiff. *Huffman and Wright Logging Co. v. Wade*, 109 Or App 37, 817 P2d 1334 (1991).

I recite the undisputed facts from the decision of the Court of Appeals:

"Plaintiff is a private logging corporation. Defendants are members of the environmental group, 'Earth First!.' In July, 1987, defendants participated in a demonstration on a U.S.

---

[1] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

[2] Article I, section 26, of the Oregon Constitution provides:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances [sic]."

[3] The First Amendment to the Constitution of the United States provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Forest Service logging road in the North Kalmiopsis area of the Siskiyou National Forest to protest the Forest Service's policies regarding the area. During the demonstration, five of the defendants climbed on and chained themselves to plaintiff's logging equipment. The sixth defendant climbed to the top of a yarder and hung a large banner that read, 'FROM HERITAGE TO SAWDUST - EARTH FIRST!.' It depicted two trees being converted into sawdust. Defendants did not have permission to be on plaintiff's property. While they were attached to the equipment, they made statements, sang songs and chanted slogans regarding their beliefs about the need for greater environmental protection of the North Kalmiopsis area.

"As a result of defendants' actions, part of plaintiff's logging operation was shut down for most of the day. Defendants testified that their actions were justified, because '[w]ithout the nonviolent civil disobedience element of the demonstration, the event would not have been considered "newsworthy" by the press, and so likely would not have brought the issue to the attention of the public or of elected or appointed officials.' The demonstration was widely publicized.

"Later the same day, the Curry County Sheriff's Department removed defendants from the equipment and arrested them. Defendants peaceably submitted to arrest. They were charged with and convicted of third degree criminal mischief, ORS 164.345,[4] and served two weeks in the Curry County Jail. They also were each ordered to pay a $250 fine and to make full restitution to the sheriff's department and to plaintiff for its down time." *Huffman and Wright Logging Co. v. Wade, supra,* 109 Or App at 39-40.

Plaintiff then filed this civil action against defendants. The complaint alleged that defendants committed trespass by intentionally and wrongfully interfering with and depriving plaintiff of the use of its logging equipment, and asserting claims for $7,818.26 in compensatory damages for

---

4 ORS 164.345 provides:

"(1) A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that the person has such right, the person tampers or interferes with property of another.

"(2) Criminal mischief in the third degree is a Class C misdemeanor."

lost revenues and for $50,000 in punitive damages. Defendants conceded their liability for compensatory damages, although they disputed the amount, and the case went to trial on that issue and on the issue of punitive damages. As an affirmative defense to plaintiff's claim for punitive damages, defendants asserted that Article I, sections 8 and 26, of the Oregon Constitution and the First Amendment to the federal constitution prohibited the award of punitive damages for their expressive conduct and political speech. The jury returned a verdict of $5,717.34 in compensatory damages and $25,000 in punitive damages.

At the appropriate times, defendants moved for partial summary judgment, directed verdict, and judgment notwithstanding the verdict (JNOV) on the punitive damages claim, asserting at each point, based on the undisputed facts, that punitive damages may not constitutionally be imposed for defendants' expressive conduct and political speech. The trial court denied each motion, and defendants appealed.

The Court of Appeals affirmed the judgment of the circuit court, having considered both the constitutional claims and also defendants' assertion that certain evidence and argument relating to defendants' political views should have been excluded as irrelevant or unduly prejudicial. *Huffman and Wright Logging Co. v. Wade, supra*, 109 Or App at 42-45. Defendants petitioned for review only on the question whether the award of punitive damages was constitutionally permissible.

This court's prior cases provide significant guidance in analyzing defendants' contention based on Article I, section 8, of the Oregon Constitution. *Wheeler v. Green*, 286 Or 99, 593 P2d 777 (1979), a defamation action, was the first case in which this court addressed the availability of punitive damages for a speech-related tort. In *Wheeler*, the plaintiff recovered both compensatory and punitive damages at trial. On review, this court struck the punitive damages award, holding that a party injured by defamatory statements can recover only compensatory damages. 286 Or at 119.

*Wheeler* fashioned its holding from an examination of the constitutional right under Article I, section 8, of the Oregon Constitution to speak freely, the constitutional right

under Article I, section 10, to a remedy for an injury to reputation,[5] and the constitutional acknowledgement in Article I, section 8, that persons shall be responsible for an abuse of the right of free speech. *Id.* at 118-19. This court reasoned that, although defamation constitutes an "abuse" of the right to speak freely, responsibility for such abuse is limited by Article I, section 8, to civil liability for compensatory damages caused by the abuse. *Id.* at 118. In so doing, this court stated that it was convinced by two considerations: (1) the threat of large punitive damage recoveries for defamatory statements could inhibit even non-defamatory protected speech; and (2) punitive damages to deter and punish are not "necessary to compensate the plaintiff for injury to reputation" under Article I, section 10, which expressly protects against injury to reputation. *Id.* at 118-19.

The next case in which this court confronted the question of the viability of punitive damages under Article I, section 8, was *Hall v. The May Dept. Stores*, 292 Or 131, 637 P2d 126 (1981). In *Hall*, the plaintiff received compensatory and punitive damages for the defendant's intentional infliction of emotional distress caused by outrageous conduct. The conduct at issue involved expression, consisting of threats and accusations by an employer's security guard. The security guard accused the plaintiff of stealing from the cash register. He then threatened her with prosecution. This court rejected the jury's award of punitive damages, relying on *Wheeler v. Green, supra,* for its holding:

> "*Wheeler v. Green* found the proper accommodation in interpreting the responsibility for abuse which section 8 excludes from freedom of speech to be responsibility to an injured party for the 'injury done him in his person, property, or reputation' stated in section 10. It does not extend beyond compensation for the injury to punishment or deterrence. * * *
>
> "* * * * *

---

[5] Article I, section 10, of the Oregon Constitution, which guarantees a remedy for injury done to reputation (as in the case of defamation), also guarantees a remedy for injury to property:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

"* * * The principle of the holding, as stated above, was that punitive damages by definition go beyond whatever financial recompense is proper to compensate a plaintiff for the injury suffered by the plaintiff personally. Where such damages beyond any actual injury are allowable, the plaintiff collects them as a form of public punishment, not by virtue of a personal entitlement to compensation. When the cause of defendant's liability is his 'abuse' of speech and expression, as in the case of defamation, *Wheeler v. Green* holds that the 'responsibility for the abuse' is confined to civil liability for compensation only. Here the injury was to plaintiff's person rather than her reputation, but as long as it resulted from an 'abuse' of speech only, the principle is the same." *Hall v. The May Dept. Stores, supra,* 292 Or at 145-46.

In *Hall*, this court did not define what it meant by an " 'abuse' of speech and expression" for which punitive damages could not be awarded, but recognized that the speech-based tort of defamation discussed in *Wheeler* was an example. This court considered the distinction between the tort of defamation and the tort of intentional infliction of emotional distress for purposes of the limitation on responsibility for an abuse of speech and expression that was fashioned in *Wheeler* for defamation actions:

"Plaintiff seeks to distinguish the rule of *Wheeler v. Green* because 'speech is the gravamen of the tort of defamation,' whereas, according to plaintiff's argument, Mr. Rummell's speech in this case was only incidental to the tort of intentional infliction of severe emotional distress. The distinction would have weight if the tort in this case rested on any conduct other than Rummell's accusations to plaintiff in the course of his interrogation. Of course infliction of emotional distress, unlike defamation, can be committed by other means than expression or communication. *See, e.g., Brewer v. Erwin,* [287 Or 435, 600 P2d 398 (1979)]. But in this case we have found no other conduct that could qualify as this tort.

"* * * To put the point in a nutshell: If Rummell had called plaintiff a thief in the presence of the third person at the interrogation, the rule of *Wheeler v. Green* would limit her recovery for slander to actual damages and exclude punitive damages. If he had broadcast his accusation throughout the store or published it in print, her actual damages might be greater, but punitive damages would be

excluded. The same distinction between 'remedy' and 'punishment' for speech and expression of opinion excludes punitive damages when the accusation was made to her face and the injury for which she seeks a remedy is emotional distress." *Hall v. The May Dept. Stores, supra,* 292 Or at 146-47.

To summarize, *Wheeler* and *Hall* held that punitive damages cannot be awarded in cases in which the right of free speech is abused by tortious activity where that tortious activity itself is committed by speech. This court had not yet confronted the case in which speech was accompanied by or communicated through other tortious activity where the elements of the underlying tort are not based on speech. This court, however, had recognized in *Hall* that punitive damages might be available if the underlying tort could be established by "conduct other than" the speech, where the accompanying speech was only "incidental." *Hall v. The May Dept. Stores, supra,* 292 Or at 147.[6]

In *Lewis v. Oregon Beauty Supply Co.,* 302 Or 616, 733 P2d 430 (1987), this court permitted an award of punitive damages in an action for intentional interference with a business relationship. In *Lewis,* the plaintiff had refused to date Scott, a warehouse supervisor, and:

"Scott reacted in a hostile manner. He exhibited his hostility towards plaintiff in the workplace. He 'glared' at her from outside her office and told other employes that she had given him a venereal disease. He swore at her, called her a whore, searched her personal belongings and threw things at her. He refused to cooperate with her when she required information necessary to function in her job and would 'fling' merchandise and paperwork into her office. On one occasion he intentionally slammed a door which hit plaintiff. He also told other employes that plaintiff would not be working [there] much longer." *Id.* at 618.

The plaintiff ultimately left employment at the business. The activity giving rise to the tort claim of intentional interference with business relationship thus included several acts with varying mixes of conduct, speech, and defamatory

---

[6] *See also Hall v. The May Dept. Stores,* 292 Or 131, 150-51, 637 P2d 126 (1981) (Lent, J., concurring in part; dissenting in part) (punitive damages should be available where the message is incidental to a verbal communication that seeks to intimidate or inflict emotional distress).

speech. This court upheld the award of punitive damages because some of the acts constituted "noncommunicative conduct" or "non-expressive conduct," and those acts provided a basis for which punitive damages could be awarded.

> "Scott did not request an instruction that would have required the jury to separate expression from noncommunicative conduct in its determination of punitive damages. He considered all his acts privileged expression exempt from a punitive damages award. It is obvious, however, that some of his acts, such as searching plaintiff's property and intentionally slamming the door into her, are non-expressive conduct for which punitive damages could properly be awarded. Because Scott failed to ask for a punitive damages instruction limiting the jury's consideration to non-expressive conduct, we uphold the punitive damages award."
> *Lewis v. Oregon Beauty Supply Co., supra,* 302 Or at 629.

What is significant about the discussion in *Lewis* is that the court was considering a number of distinct incidents and that, in that context, the court held that some of those distinct acts (*i.e.,* those that are non-expressive conduct) could be the basis for an award of punitive damages. This is consistent with this court's suggestion in *Hall v. The May Dept. Stores,* quoted *supra,* 317 Or at 467, that punitive damages could be awarded for conduct where the communicative component of the conduct was incidental. This court did not, and has not, addressed the question whether punitive damages could be awarded for the conduct component of an overall activity that is intertwined with significant communicative components. The analysis in *Lewis* contemplated considering a non- expressive act separately from expressive acts, but did not contemplate considering the conduct component of an expressive or communicative act separately from the expressive component of the same act.

This case thus calls on this court to consider, for the first time, whether to apply the punitive damages analysis to a case in which the underlying tort itself is not speech-based, but the communicative component of the activity is significant rather than merely incidental.[7] One important part of

---

[7] The analysis of this opinion does not prevent liability where the message is not a significant part of the overall activity or is not used to determine whether punitive damages are awarded.

the analysis articulated by this court in *Wheeler, Hall,* and *Lewis* is that punitive damages cannot be awarded for a speech-based tort, such as defamation or intentional infliction of emotional distress, that resulted from speech only. The converse is not true, however, that punitive damages can always be awarded for torts that are not speech-based, such as trespass to personal property.

Defendants do not dispute that civil liability for the *tort* of trespass to personal property, and even criminal liability for trespass, were appropriate in this case. With respect to the tort of trespass to personal property, in contrast to speech-based torts, determining whether the *tort* has been committed does not involve considering the communicative components of the conduct.[8]

Determining whether *punitive damages* may be awarded for the tort of trespass to personal property, however, does involve considerations separate and apart from the elements of the tort where the tort is not itself speech based. Therefore, where the tort is not speech-based, but is committed in conjunction with, accompanied by, or intertwined with a significant communicative component, a second level of analysis is necessary to determine whether an award of punitive damages violates the free speech rights guaranteed by Article I, section 8. That is, *the factors considered by the trier of fact to determine whether to award punitive damages and, if so, the amount of punitive damages, must be evaluated to determine whether they are speech-based.*

Put in stark terms, a punitive damages standard that explicitly gives the jury discretion to award punitive damages for a tort that is committed in conjunction with or accompanied by or intertwined with a significant communicative component only if the jury determines that it is in society's best interest to punish and deter the defendant's particular political message accompanying the conduct would impermissibly punish and seek to deter speech. Stated differently,

---

[8] In order to establish the tort of trespass to personal property involved in this case, the jury was instructed that it must find an "intentional, physical intrusion by a defendant on the plaintiff's property, in this case, the logging equipment[,] which causes damage to the plaintiff and which has not been authorized or consented to by the plaintiff," a determination that does not inquire into the content of the expressive political speech involved in the episode.

the punitive damages standard must be evaluated separately where the tort itself is established by elements other than speech, but where speech is a significant component of the tort.

The instruction on punitive damages that was given by the trial court in this case was based on Uniform Civil Jury Instruction (UCJI) 35.01. The jury was instructed:

> "Punitive damages may be awarded to the plaintiff in addition to general damages to punish the wrongdoer and to discourage the defendant or others from engaging in wanton misconduct.
>
> "In considering the punitive damages, you must first determine whether the defendant was guilty of wanton misconduct that caused damage to the plaintiff. Wanton misconduct is conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.
>
> "If you decide this issue against the defendants, you may award punitive damages, although you are not required to do so because punitive damages are discretionary. In the exercise of that discretion, you may consider the importance to society in deterring similar misconduct in the future.
>
> "If you decide to award punitive damages, you may properly consider the following items in * * * fixing the amount. One, the character of the defendants' conduct; two, the defendants' motives; three, the sum of money that would be required to discourage the defendants and others from engaging [in] such conduct in the future; and four, the income and assets of the defendants."

This punitive damages standard invited the jury to consider the communicative components (*i.e.*, the "expressive" political speech) of defendants' activity in at least five ways: (1) in determining whether defendants' misconduct was "wanton," *i.e.*, whether defendants' conduct was "a particularly aggravated, deliberate disregard of the rights of others," the jury was invited to go beyond the conduct and consider whether defendants' expressive political speech made the accompanying conduct bad; (2) in determining the "importance to society in deterring similar misconduct," the jury was invited to determine whether the message that defendants were trying to communicate was important or whether it should be deterred and silenced; (3) in determining the "character of defendants' conduct," the jury was invited

to look behind the conduct to the content, motivation, or legitimacy of defendants' message and perhaps even to the defendants' sincerity in pursuing this particular means of communicating; (4) in determining "defendants' motive," the jury was invited to evaluate why defendants did what they did, *i.e.*, to evaluate the message accompanying or communicated through their conduct; and (5) in determining the "sum of money that would be required to discourage defendants and others from engaging in such conduct in the future," the jury was invited to evaluate the intensity and sincerity of defendants' beliefs that led them to communicate those beliefs through this particular means.

The resulting possibility that speech will be punished due to the punitive damages standard is of constitutional magnitude when speech is a significant component or is an integral part of the overall tortious activity for which punitive damages are sought.

The existence of an incidental communicative component, however, is not enough to raise the case to an issue of constitutional magnitude, for conduct routinely has some expressive content. Even the conduct described as "nonexpressive" or "noncommunicative" in *Lewis v. Oregon Beauty Supply Co., supra,* had incidental expressive content: Searching the plaintiff's purse can express mistrust or disdain for her privacy; slamming a door into the plaintiff can communicate hatred, anger or frustration. Indeed, by their very impropriety, these acts may underscore their underlying expressive content. They may communicate not only the actor's feelings (*e.g.*, disdain or anger), but also the actor's opinions (*e.g.*, "I do not think that you can be trusted"). Yet, this court in *Lewis* characterized that conduct as "nonexpressive" for purposes of determining whether punitive damages can be awarded because the communicative element of the overall activity was incidental. That characterization was valid because what was significant about the activity was the act and not the incidental communicative component.

When, however, the tortious conduct is committed in conjunction with or accompanied by or is intertwined with speech or expressive conduct, *i.e.*, when both the tortious conduct and the speech are significant elements of the overall activity, or when the tortious conduct is itself expressive,

then the communicative speech component is no longer merely incidental and a punitive damages standard that allows the jury to award punitive damages or to determine the amount of punitive damages for that communicative component is constitutionally impermissible under Article I, section 8, of the Oregon Constitution. If conduct is to be considered apart from the significant communicative component, the communicative component must not be allowed to be a factor in evaluating the conduct in determining whether to award punitive damages or to determine the amount of punitive damages.

This analysis is consistent with the critical thread that binds together this court's prior decisions in *Wheeler, Hall,* and *Lewis,* that punitive damages may not be imposed for tortious conduct if speech is a significant factor in determining whether to award punitive damages for that tortious conduct. This is true where speech is an element of the definition of the underlying tort; it is no less true when speech is part of the analysis of punitive damages augmenting liability for a tort that is not speech-based.

This analysis is also consistent with this court's Article I, section 8, jurisprudence in cases that did not address punitive damages. Where the focus of a sanction is on the result of the defendant's speech-motivated conduct without regard for the message, such as in determining liability for the underlying trespass to personal property, Article I, section 8, is not implicated. When, however, the focus of a sanction is on significant expression or speech used to achieve those results or on the content of the expression or speech itself, such as in determining punitive damages liability or the amount of punitive damages where speech is a significant component of the underlying activity, Article I, section 8, is violated. *See State v. Plowman,* 314 Or 157, 164, 838 P2d 558 (1992) (discussing Article I, section 8, analysis); *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982) (same).[9]

---

[9] This approach is also consistent with the more in-depth statement of the approach offered in *In re Fadeley,* 310 Or 548, 575-76, 802 P2d 31 (1990) (Unis, J., concurring in part, dissenting in part), cited with approval in *Moser v. Frohnmayer,* 315 Or 372, 375 n 1, 845 P2d 1284 (1993). Under the four steps in that approach, (1) the punitive damages standard used by the trier of fact in this case on its face allowed sanctions to be directed at or determined by speech; (2) the restraint of punitive damages was not "well established when the first American guarantees of

I conclude that the punitive damages instruction in this case,[10] when applied to defendants' tortious conduct where the tort itself was not speech-based but where the communicative component was a significant part of defendants' overall activity, impermissibly allowed the jury to consider the significant communicative components of defendants' tortious activity. The punitive damages standard allowed the jury to decline to award punitive damages for certain conduct, but to award punitive damages for the same conduct because of the content of defendants' expressive conduct and political speech. More important than the consideration referred to in *Wheeler* that such an approach might inhibit protected speech in *other* cases, *see supra*, 317 Or at 465, however, is the more basic point that the punitive damages instruction in *this* case allowed punitive damages to be awarded and the amount of those punitive damages to be determined, at least in part because of defendants' expressive conduct and political speech. Allowing the message or the significant expressive conduct or political speech to influence the trier of fact on the issue of whether to award punitive damages and the amount of such damages is impermissible under Article I, section 8, of the Oregon Constitution.

I do not suggest that any criminal or tortious activity is protected because it communicates or is accompanied by a message.[11] By preventing either the award or the

---

freedom of speech were adopted" (it is this factor that allows civil sanctions for speech-based torts, an issue not explicitly addressed by the cases involved in the analysis in this case); (3) the punitive damages standard is not narrowly enough drawn to focus only on the conduct accompanying the speech; and (4) the speech involved is not "incompatible with the performance of" a special role or function (to the contrary, the speech is political in nature, the type of speech at the core of the constitutional protections).

[10] In contrast to focusing on defendants' motive or purpose for their actions, focusing on defendants' attitude upon learning of a hazard directs attention toward the hazard rather than toward the expression. *See State ex rel Young v. Crookham*, 290 Or 61, 72, 618 P2d 1268 (1980) (quoted with approval in *Oberg v. Honda Motor Co.*, 316 Or 263, 283, 851 P2d 1084 (1993), and in *Honeywell v. Sterling Furniture Co.*, 310 Or 206, 211, 797 P2d 1019 (1990)); UCJI 35.03 (incorporating the language regarding attitude upon learning of a hazard rather than the language regarding motive for punitive damages in product liability cases).

[11] Plaintiff cites the example of a politically-motivated assassination having elements of communication, as it no doubt does. The fact that conduct communicates does not immunize the actor from liability, but the message cannot be the basis for the liability where the message is a significant component of the overall activity.

determination of the amount of punitive damages for tortious conduct to be influenced by the accompanying or intertwined significant speech or conduct with a significant communicative component, I do not sanction or encourage the tortious conduct. Rather, I would hold that the message — the significant expressive conduct and political speech — cannot be the basis for determining whether the tortious conduct is subject to more severe sanctions where the message is a significant component of the overall activity. If the tortious conduct itself is truly being deterred or punished, the non-incidental message accompanying the conduct cannot form the basis for distinguishing some conduct from other conduct. This approach gives meaning to the constitutional protection of the accompanying speech.

A defendant cannot avoid punitive damages by cloaking any activity in speech garb; the communicative component must be a significant part of the overall activity. Nor can a defendant avoid liability for any activity done as a means to communicate a message; liability standards that do not allow the message to be considered would not be affected by my approach. Indeed, the compensatory and criminal liability imposed for defendants' conduct were not even challenged by defendants. The trial judge found that there was no property damage or violence. Defendants' tortious conduct in this case consisted of climbing on plaintiff's logging equipment, chaining themselves to the equipment, and hanging a banner from one piece of logging equipment that read "FROM HERITAGE TO SAWDUST — EARTH FIRST!" Defendants assert that this "nonviolent civil disobedience" both was tied to expression and was itself expressive. I agree that both the conduct and the accompanying speech were significant elements of the overall demonstration activity protesting the government's logging practices. It was error for the trial court to instruct the jury that defendants' significant expressive conduct and political speech that accompanied the tortious conduct may be considered in determining whether to award punitive damages and for determining the amount of punitive damages in this case.

I would hold, therefore, that it is constitutionally impermissible under Article I, section 8, of the Oregon Constitution to allow an award of punitive damages for

defendants' tortious conduct and the amount of those punitive damages to be determined, at least in part, because of the significant expressive conduct and political speech accompanying or intertwined with that conduct. This disposition of that issue under Article I, section 8, of the Oregon Constitution would render unnecessary any consideration of defendants' claims under Article I, section 26, of the Oregon Constitution and under the First Amendment to the federal constitution. This disposition also would render unnecessary any consideration of the assertion by *amicus curiae* that the trial court erred in admitting certain background evidence related to defendants' political ties and motives considered by the jury in its deliberations on punitive damages.

I would reverse the decision of the Court of Appeals and the judgment of the circuit court as to the award of punitive damages. I, therefore, respectfully dissent.

Van Hoomissen, J., joins in this dissenting opinion.