Argued at Pendleton October 27; affirmed December 30, 1930

COVE LODGE No. 52 *v.* HARRIS ET AL.

(294 P. 355)

*J. D. Slater* of La Grande for appellant.

*John S. Hodgin* of La Grande for respondent.

BEAN, J. The plaintiff is the owner and occupier of lot 5 in block D of the city of Cove, Union county, Oregon. The lodge building of plaintiff is located in the northeast corner of the lot. Main street is on the north thereof, and First street, which intersects Main, is on the west. Plaintiff alleges that defendants threaten to and will, unless restrained, wrongfully divert water from what is known as a branch of Mill creek along the property of plaintiff in front of said building and permanently maintain the same; that the construction of such ditch or conduit will greatly injure the premises and become a permanent encumbrance thereon, and that the ditch or conduit is sought to be maintained solely for the private use of the defendants other than said city of Cove.

The defendants aver that the ditch was relocated by the city along one of its streets in front of the Odd

Fellows Hall by agreement with the owners of the water, which had been adjudicated to them, flowing in such ditch, for drainage and sanitary purposes, and that such change in no way injured plaintiff and contributed to the dryness of the streets and the sanitary condition of the city.

The facts which seemingly have a bearing on the equities of the case are about as follows: Cove is a small community of a few hundred people in the east part of Grande Ronde valley, laid off in blocks and lots, mostly of large size, containing gardens and orchards, which, during the summer time, are extensively irrigated by the waters of Mill creek and springs arising from melting snows in the mountains on the east. It was incorporated in 1917 by an initiative charter. At the southwest corner of the intersection of the streets at the corner of lot 5 is block C and across Main street northwest is block B. Prior to the relocation of the ditch in question, it carried ten or twelve inches of water, miner's measurement, from Mill creek, a short distance south from block D, running in a general northwesterly direction. This ditch, after its diversion from the creek, ran to lands of the water users by means of natural swales and ditches made to convey the small amount of water. When the water reached First street, it ran along an open ditch on the east side of the street at the side of block D to near lot 5. Then the water followed a natural depression or swale diagonally across First street, passing across block C and then diagonally across Main street into block B; thence, after passing through a barnyard and near a pigpen, it entered a ditch and continued in a general northwesterly direction across the schoolhouse grounds to lands on which the water was used. The streets of the city are unpaved and are sometimes called "roads"

and sometimes "streets" in the testimony. The adjacent country, especially that portion eastward toward the mountain, is largely devoted to raising fruits and garden produce. During the summer time the blocks within the town and the surrounding country are extensively irrigated and the seepage water therefrom produces subirrigation inside the city limits against which it is necessary to make provision. The water passing diagonally across block C in the swale caused considerable annoyance in the community. The streets became miry and the condition was insanitary. The owners of the water in the ditch, with the exception of Frank Bloom who owned land in block C, some of whom were officers of the city, made a proposition to the city to relocate a small part of the ditch on higher ground along the east part of First street, past the property of plaintiff, about five or six feet from the property line connecting with the culvert across Main street; thence west across First street; thence northwesterly over block B and at an elevation higher than the barn, to avoid the contaminating conditions prevailing in the old ditch, and thence into the original ditch. The parties interested in the ditch agreed with the city council to pay the expenses necessary to make this change. The mayor called the city council together and the council authorized the relocation of the ditch at the expense of the parties interested in the water. The ditch was then constructed under the supervision of the street commissioner along the west of plaintiff's property, with a six-inch concrete tiling buried therein, and the ground was smoothed about as it was before the construction of the ditch. There was a ditch known as the Odd Fellows ditch along Main street, past plaintiff's property on the north, and with which the new ditch was connected. This ditch was also constructed,

at the instigation of plaintiff, in about the same manner as the ditch in controversy, after the lodge obtained permission of the city therefor.

The testimony shows that after the ditch complained of was constructed, ingress to and egress from the lot and building of plaintiff was not rendered less convenient than it was prior to the construction of the ditch. Cars can be parked on the north and west of plaintiff's lot; that is, on the south of Main street and the east of First street. The tile was sufficient to carry all the water running in the ditch which was apportioned to the water users. It also served as drainage to the street, especially after passing the property of plaintiff by correcting the conditions in the old swale. Frank Bloom was entitled to one-fourth of an inch of water and the plan was to leave that remaining near the southwest corner of lot 5 in First street to run onto his land in block C. This amount of water was too small to affect the insanitary and obnoxious conditions mentioned.

Plaintiff asserts that the court erred (1) in overruling the demurrer of plaintiff to the amended answer; (2) in holding that the work was that of city improvement, and (3) in allowing as evidence the minutes of the meeting of the city council on May 24, 1929, attempting to authorize the relocation of the ditch. These three assignments of error may be considered together as they practically involve the question of the right of plaintiff to enjoin the construction and maintenance of the ditch.

Chapter 4, section 2 of the charter of the city of Cove provides:

"The Common Council shall have power within the limits of the city of Cove, as follows: * * * (8) To improve the public grounds within the city, to establish and open streets and alleys therein, in addi-

tion to those now, or hereafter laid out or established within the limits of the city; the power and authority to improve streets, including the authority and power to construct, improve, repair, and keep in repair, sidewalks, crosswalks and sewers;   *   *   *."

■ It seems that there are three things that are affected by the ditch in controversy; namely, the improvement of the street, which the charter authorizes the council to make, the drainage of premises in the city and the sewage or sanitary condition of the community. The fact that the city obtained the improvement by means of the construction of the ditch in question "without money and without price" does not render the improvement any less a municipal one.

In 3 Dillon, Mun. Corp. (5th Ed.), § 1155, it is stated:

"The use of the streets of a city must be extended to meet new means of locomotion, and in the case of sub-surface structures a disposition is shown by the courts to recognize these as legitimate street uses when designed for the public health or comfort, and the general advantage of the citizens of the municipality, and not maintained primarily or exclusively for the emolument of private corporations."

■ Both legislative and executive powers are possessed by municipal corporations. Often executive powers are vested in the council or legislative body and are exercised by motion, resolution or ordinance: 7 McQuillin, Mun. Corp., § 351c; *Campbell v. City of Eugene,* 116 Or. 264 (240 P. 418).

■ The council, having full power over the subject, may exercise it in any manner that may be most convenient. It may direct the street commissioner to superintend the necessary work or it may appoint or designate any other competent or suitable person to do it: *Beers v. Dalles City,* 16 Or. 334 (18 P. 835).

Quoting from Dillon:

"Public corporations may, by their officers and properly authorized agents, make contracts the same as individuals and other corporations in matters that necessarily appertain to the corporation; being artificial persons, they cannot contract in any other way": 1 Dillon on Mun. Corp. (4th Ed.), § 445; *Beers v. Dallas City,* 16 Or. 334 (18 P. 835).

■■ The right of a municipality to exercise the power to preserve the health, to promote the morals and to promote the safety of its citizens has long been settled by repeated adjudications. Where a city charter empowers a regulation of the use of streets the grant of power is not limited to the mere right to put the thoroughfare in order for travel or keep it in repair, but authorizes the laying of pipes for gas, water and such other conveniences as the public may require, under the supervision of the street commissioner and to the satisfaction of the city: *Mutual Irr. Co. v. Baker City,* 58 Or. 306, 326 (110 P. 392, 113 P. 9). In *Lowell v. Pendleton,* 123 Or. 383 (261 P. 415), we find the following:

"It is well established that while additional uses may be imposed upon a street not submersive of or impairing the original street, such as subjecting a street to new modes of travel, or laying down gas or water mains; yet the rights of the public to use it as a street and of the adjacent lot owner to enjoy it as a means of ingress to and egress from his property cannot be materially impaired."

■ We see no more impropriety in allowing water for irrigation to be conducted along a street than there would be in allowing gas or electricity to be conveyed in such highway. It is well known that cities have water running in open ditches along the streets. The case of *Lowell v. Pendleton,* supra, cited by plaintiff,

lays down a salutary rule, and the construction of the ditch in question is in no way an infringement on such rule. The rights of the Odd Fellows Lodge and the public to use the streets and the enjoyment of the means of ingress to and egress from the building and lot of plaintiff are not materially impaired. On the other hand, we think it is benefited by the improvement.

Chapter 4, section 3 of the charter of the city of Cove authorizes the council to prevent and remove nuisances "and to provide against the introduction and spread of contagious diseases within the city. * * *" The right of the irrigators to use the street originally is not involved in the present case. For many years the ditch, uncovered, has been located in the street along half the distance of block D.

The seepage and moist condition of the street, which was complained of after the tiled ditch was constructed, it appears to us, was occasioned by the interference with the tiling and breaking of same and stopping it up, which caused flooding.

It seems unnecessary to consider whether the city proceeded in a strictly regular manner in making provisions to change the course of the old ditch, for the reason that the evidence does not sustain the allegations of the complaint that plaintiff's property was injured by the construction of the tiled ditch. Acts which are irregular and unauthorized and have no injurious results constitute no ground for injunctive relief. Substantial and positive injury must always be shown before a court will grant an injunction: High on Injunction (4th Ed.), § 9. The equities are not with the plaintiff.

The decree of the circuit court is affirmed.

Coshow, C. J., Rand and Kelly, JJ., concur.