Argued and submitted October 29, 1993, decision of the Court of Appeals affirmed on other grounds and judgments of conviction reversed April 7, 1994

## CITY OF EUGENE,
*Petitioner on Review,*

*v.*

## David Henry MILLER,
*Respondent on Review.*

(CC 91-50062, 91-50073;
CA A75143 (Control), A75145; SC S40396)

871 P2d 454

William F. Gary, Eugene, argued the cause and filed the petition for petitioner on review. With him on the petition was Ellen D. Adler of Harrang Long Watkinson Laird & Rubenstein, P.C., Eugene.

Rebecca R. Davis, Eugene, argued the cause and filed the responses for respondent on review.

Madelyn K. Wessel, Deputy City Attorney, Portland, filed a brief for *amicus curiae* League of Oregon Cities.

Edmund J. Spinney, Eugene, filed a brief for *amicus curiae* American Civil Liberties Union.

Before Carson, Chief Justice, and Peterson,** Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GILLETTE, J.

** Peterson, J., retired on December 31, 1993.

Unis, J., specially concurred and filed an opinion in which Fadeley, J., joined.

## GILLETTE, J.

In these consolidated cases, defendant was convicted of violating Eugene Code section 4.860(d), one of the sidewalk vending ordinances of the Eugene city code,[1] by selling joke books on a city sidewalk. The Court of Appeals reversed the convictions, concluding that the Eugene sidewalk vending ordinance violated Article I, section 8, of the Oregon Constitution.[2] *City of Eugene v. Miller*, 119 Or App 293, 851 P2d 1142 (1993). Because we agree that the ordinance as applied to defendant's activities violated defendant's rights under Article I, section 8, we affirm the decision of the Court of Appeals, albeit on different grounds.

At all times relevant to these proceedings, the Eugene Code contained the following provisions related to sidewalk vending.[3] Eugene Code section 4.860 prohibited certain activities on streets and sidewalks. Subsection (d) of that section provided:

"Unless otherwise authorized by this code, no person shall:

"* * * * *

"(d)  Set up or operate a vehicle, stand or place for the display or sale of merchandise, or sell, vend, or display for sale an article in the streets or on the sidewalks or in doorways or stairways of business houses, or in any other place where such activity causes congregation and congestion of people or vehicles on the streets or sidewalks."

---

[1] As we explain, *post*, the constitutional issue in these cases arises not because of the prohibitory wording of Eugene Code section 4.860(d) itself. The problem arises because another ordinance, Eugene Code section 3.338(e), qualifies the flat prohibition in section 4.860(d) by permitting certain kinds of activity, while the activity that defendant wished to carry on — bookselling — remained prohibited.

[2] Article I, section 8, of the Oregon Constitution, provides: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

[3] After the Court of Appeals issued its opinion in these cases in April 1993, the City of Eugene amended its sidewalk vending ordinances. Defendant argues that the amendments rendered these cases moot. They did not. A justiciable controversy remains, because the validity of defendant's two convictions under the former version of the ordinances depends on the resolution of the constitutional issues presented by these cases.

Eugene Code sections 3.336 to 3.342 established a scheme for the licensing of sidewalk vendors, thereby providing an exception to the prohibition in section 4.860(d).[4] Section 3.338 imposed certain requirements on licensed vendors. One of those requirements, set out in section 3.338(e), was that vendors "[s]ell only the food, beverages, flowers or balloons designated on the license."[5] The sale of any other kind of merchandise, including books, was not authorized. According to the city, the purpose of the sidewalk vending scheme was "to reduce congestion, ensure public safety, promote business development by fostering a carnival-like atmosphere, lessen unfair competition and minimize city liability by restricting unlicensed commercial sales transactions on public sidewalks."

On July 24, 1991, and again on August 13, 1991, defendant was cited for selling a joke book to a pedestrian on a sidewalk in Eugene in violation of Eugene Code section 4.860(d) (set out above). In the municipal court, and again on appeal in the district court, defendant argued that the limitation of licenses to vendors of food, beverages, flowers, and balloons violated various state and federal constitutional provisions, including the free speech guarantee of Article I, section 8, of the Oregon Constitution.[6] The municipal and district courts rejected defendant's constitutional claims and convicted him of both charges.

The Court of Appeals reversed the convictions. A five-member majority of that court concluded that the sidewalk vending ordinance violated Article I, section 8, because the ordinance was overbroad. *City of Eugene v. Miller, supra*, 119 Or App at 297-98. The majority also concluded that the

---

[4] The Eugene Code also provided for at least two other exceptions: the conduct of business within a "pedestrian mall" and other sidewalk sales approved by permit as part of a "special event." Eugene Code § 3.337 (later amended). Defendant acknowledged that he is permitted to sell his books in public during a "Saturday Market" that takes place every week from April through December.

[5] Additional requirements were that each vendor submit to the city a hold harmless agreement and proof of liability insurance, conduct business only at the location designated on the license, pay a right-of-way fee, and occupy the vending location five days per week for six hours per day. None of those additional requirements is at issue here.

[6] In both cases, defendant raised his constitutional claims by demurrer, motion to dismiss, and motion for judgment of acquittal.

ordinance was invalid as a "content-based regulation," because "it regulates different exercises of the same commercial activity differently, on the basis of what is sold and communicated." *Id.* at 299 (emphasis deleted). Three dissenting judges concluded that the ordinance did not violate Article I, section 8. *Id.* at 301-06 (Edmonds, J., dissenting).[7] We allowed the city's petition for review to address this important constitutional issue.

■ We first address a threshold issue regarding appellate jurisdiction. In the Court of Appeals, the city argued that the court did not have jurisdiction, because defendant could not attack the constitutionality of Eugene Code section 3.338(e) on appeal from his convictions for violating section 4.860(d). *See* ORS 221.360 (allowing appeal from district court to Court of Appeals in cases "involving the constitutionality of the * * * ordinance under which the conviction was obtained"). The Court of Appeals concluded that it had jurisdiction in these cases under ORS 221.360, because section 3.338(e) "is *in pari materia* with the ordinance under which [defendant] was convicted." *City of Eugene v. Miller, supra,* 119 Or App at 296. At oral argument before this court, the city again raised its jurisdictional argument. For the reason stated in that court's opinion, we agree with the Court of Appeals that appellate jurisdiction is proper in these cases.

We turn to the central question in these cases — whether applying the prohibition in Eugene Code section 4.860(d) to defendant, while relieving certain other persons of the burden of that section under the terms of Eugene Code section 3.338(e), violates defendant's right to free speech guaranteed by Article I, section 8.

Defendant first contends that the Eugene ordinance is invalid as a regulation directed at the "content" of speech, because the ordinance "allows the selling of some objects but not others." Defendant also contends that the ordinance is unconstitutionally overbroad, because "the restriction based

---

[7] The dissenting judges also rejected defendant's alternate arguments that the ordinance violated the free speech guarantee of the First Amendment, the equal protection clause of the Fourteenth Amendment, and the equal privileges clause of Article I, section 20, of the Oregon Constitution. Because we dispose of these cases under Article I, section 8, we need not address defendant's alternative arguments.

on the types of goods sold does nothing to further the stated purpose of the ordinance."

In response, the city argues that the ordinance does not violate Article I, section 8, because the ordinance "regulates commerce, not speech." That distinction is of questionable value, however, in view of this court's recognition that "[s]elling is a form of communicative behavior that includes speech" and that regulations on selling therefore implicate "speech."[8] *City of Hillsboro v. Purcell*, 306 Or 547, 555, 761 P2d 510 (1988).

■ The city attempts to distinguish *Purcell* by arguing that that case involved "solicitation" and that Eugene Code section 3.338(e) "does not presume to regulate solicitation." Contrary to the city's assertion, however, its ordinance *does* regulate solicitation[9] and, under prior decisions of this court, a law that regulates solicitation implicates Article I, section 8. *See Moser v. Frohnmayer*, 315 Or 372, 845 P2d 1284 (1993) (statute regulating use of automatic dialing and announcing devices to solicit purchase of real property, goods, or services held invalid under Article I, section 8); *City of Hillsboro v. Purcell, supra*, (ordinance criminalizing door-to-door solicitation held invalid under Article I, section 8).

■ Nevertheless, we need not decide whether applying to defendant the prohibition of Eugene Code section 4.860(d), as qualified by the exception in Eugene Code section 3.338(e), violates Article I, section 8, by impermissibly regulating "solicitation" or some other part of a sales transaction that might be characterized as "speech" subject to constitutional protection. Even assuming, *arguendo*, that the words of offer

---

[8] By "speech," we mean, and understand the city to mean, "the free expression of opinion, or * * * the right to speak, write, or print freely on any subject whatever," which is referred to in Article I, section 8, of the Oregon Constitution. We use the words "speech" and "expression" interchangeably. *See Huffman and Wright Logging Co. v. Wade*, 317 Or 445, 450 n 5, 857 P2d 101 (1993) (employing the same terminology).

[9] At all times relevant to these cases, Eugene Code section 3.336 provided that, "[a]s used in sections 3.336 to 3.342, 'sell' or 'offer for sale' includes but is not limited to the *solicitation*, exchange, transfer or delivery of goods or services." (Emphasis supplied.) Therefore, contrary to the city's assertion, section 3.338(e), which allows sidewalk vendors to "sell" only food, beverages, flowers, and balloons, is not limited in its application to the "exchange of money for goods," but also applies, *inter alia*, to "solicitation."

and acceptance in a sales transaction are not "speech" that is protected by Article I, section 8, we nonetheless conclude that the Eugene ordinance violates Article I, section 8, because, as applied to defendant, it unreasonably impinges on the dissemination of expressive material that is itself protected under Article I, section 8.

The city does not dispute that defendant's joke books are expressive material. The city also does not dispute that expressive material may be protected as speech under Article I, section 8. *See City of Hillsboro v. Purcell, supra,* 306 Or at 555 ("[s]elling * * * may involve goods that are protected expression"); *id.* at 555 n 6 ("licensing may implicate speech rights if applied to the sale or distribution of products, such as newspapers and magazines, involving expression"). Finally, the city does not dispute that, by expressly permitting the sale of food, beverages, flowers, and balloons *only*, the operative combination of sections 4.860(d) and 3.338(e) limits the dissemination of expressive material such as defendant's joke books.[10] The city's contention is that the limitation on the sale of expressive material is nonetheless valid, because "[e]xpressive material as a commodity, like any other commodity, is not exempt from content-neutral regulations." According to the city, "the analysis in this case is the same whether the commodity involved is joke books or furniture." In other words, the city contends that, so long as it does not distinguish among expressive material based on the material's content, it may regulate the sale of expressive material like any other commodity. For the reasons that follow, we disagree.

■ The city is correct to the extent that it is arguing that expressive material is not exempt from *all* "content-neutral" regulation. As this court stated in *City of Portland v. Tidyman,* 306 Or 174, 182, 759 P2d 242 (1988):

"A grocery store gains no privilege against a zoning regulation by selling *The National Enquirer* and *Globe* at its check-

---

[10] The city points out that "[d]efendant has not come forward with any evidence that he was denied a license under [Eugene Code section] 3.338." Like the Court of Appeals, "[w]e attach no significance to that fact because, as a matter of law, [defendant] was ineligible for a license for the very reason that he maintains makes the ordinance unconstitutional." *City of Eugene v. Miller,* 119 Or App 293, 295 n 1, 851 P2d 1142 (1993).

out counter. The same applies to 'adult businesses' that sell other merchandise besides books, pictures or records. Even structures and activities unquestionably devoted to constitutionally privileged purposes such as religion or free expression are not immune from regulations imposed for reasons other than the substance of their particular message."

Nevertheless, the principle that expressive material is not exempt from "content-neutral" regulation does not mean, as the city appears to contend, that expressive material may be subjected to *any* "content-neutral" regulation that the city wishes to impose. For instance, it is unlikely that the city could impose an outright ban on the sale and distribution of *all* expressive material within its city limits. Such a ban, though entirely neutral with regard to the "content" or "subject" of the expressive material, would be unlikely to withstand scrutiny under Article I, section 8, because it would restrict too greatly "the free expression of opinion" and "the right to speak, write, or print freely on any subject whatever." The city cannot evade scrutiny of its ordinance under Article I, section 8, merely by asserting that the ordinance is "content-neutral."

The city also is wrong when it contends that "the analysis in this case is the same whether the commodity involved is joke books or furniture." A limitation on the sale of furniture does not implicate the same free speech concerns that are implicated by a limitation on the sale of goods that are themselves protected as expression under Article I, section 8. That point is illustrated by the following passage from *City of Portland v. Tidyman, supra,* 306 Or at 182 (invalidating a city ordinance regulating "adult bookstores"):

"We note at the outset that the obstacle to the city's distinction [between 'adult' businesses and other businesses] is not the constitutional guarantee of equal privileges and immunities, Article I, section 20, but the guarantee of free expression, Article I, section 8. If free expression within that guarantee were not involved, 'adult' businesses could not insist that they must be treated exactly like any other business, not, at least, without a showing of being singled out for an impermissible motive."

(Footnotes omitted.) *Tidyman* establishes that, because limitations on the sale of expressive material involve free expression within the guarantee of Article I, section 8, such

limitations are subject to scrutiny under that provision, even though similar limitations on other, nonexpressive material may not be.

Having concluded that the operation of Eugene Code sections 4.860(d) and 3.338(e) implicates Article I, section 8, because the ordinances have the effect of limiting the sale of expressive material such as defendant's books, we must now determine whether that limitation violates Article I, section 8. In *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), this court established a basic framework for determining whether a law violates Article I, section 8. That framework recognizes three categories of laws, which this court summarized in *State v. Plowman*, 314 Or 157, 164, 838 P2d 558 (1992), *cert den* ____ US ____, 113 S Ct 2967 (1993).

The first *Robertson* category consists of laws that "focus on the *content* of speech or writing" or are " 'written in terms directed to the substance of any "opinion" or any "subject" of communication.' " *State v. Plowman, supra,* 314 Or at 164 (quoting *State v. Robertson, supra,* 293 Or at 412) (emphasis in original). Laws within that category violate Article I, section 8, "unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *State v. Robertson, supra,* 293 Or at 412. The second *Robertson* category consists of laws that "focus[] on forbidden effects, but expressly prohibit[] expression used to achieve those effects." *State v. Plowman, supra,* 314 Or at 164. Laws in that category "are analyzed for overbreadth." *Ibid.* Finally, the third *Robertson* category consists of laws that "focus[] on forbidden effects, but without referring to expression at all." *Ibid.* Laws within the third category are analyzed to determine whether they violate Article I, section 8, as applied. *State v. Robertson, supra,* 293 Or at 417.

The question thus becomes whether the prohibition in Eugene Code section 4.860(d), as qualified by the exception in Eugene Code section 3.338(e), fits within the *Robertson* framework and, if so, where. As noted above, defendant first argues that the combined effect of the two sections violates Article I, section 8, because it is a "content-based" restriction

on speech. In *Robertson* terms, defendant's argument is that the ordinances are invalid because they are written in terms directed at the "subject of communication" — *i.e.*, the product sold. We disagree.

As we noted above, we assume, *arguendo*, that no part of the words of offer and acceptance in a sales transaction are "speech" protected by Article I, section 8. Given that assumption, a regulation on commercial activity is not invalid under Article I, section 8, as a "content-based" restriction simply because it distinguishes between types of products. For purposes of our analysis, the relevant "expression" that implicates the protection of Article I, section 8, is the expressive material that vendors like defendant are prohibited from selling on the sidewalks of Eugene under the ordinance. As the city points out, however, sections 4.860(d) and 3.338(e) are "content-neutral" with regard to their limitation on the sale of expressive material. It makes no difference, under the ordinances, whether a person is selling a joke book, a religious tract, or a political treatise. The ordinances limit, *inter alia*, the sale of *all* expressive material, regardless of its "subject" or "content." For that reason, sections 4.860(d) and 3.338(e) are not, collectively, a law "written in terms directed to the substance of any 'opinion' or any 'subject' of communication" and are not unconstitutional on that ground.

The next question is whether sections 4.860(d) and 3.338(e) fit within the second *Robertson* category, so that they must be examined for overbreadth. In making that determination, we first ask whether they collectively constitute a law that "focus[es] on proscribing the pursuit or accomplishment of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end." *State v. Robertson, supra*, 293 Or at 416-17. Indeed, that requirement is common to both the second and third *Robertson* categories. *Ibid.* We conclude that the Eugene sidewalk vending ordinances are such a law. Here, the forbidden "result" or "effect" that the sidewalk vending ordinances focus on is congestion on city streets and sidewalks and the resulting danger to public safety. The sidewalk vending scheme also seeks to promote business development, lessen unfair competition, and minimize city liability. In seeking to accomplish those goals, the ordinances

do not "focus * * * on the suppression of speech or writing"; therefore, they satisfy the threshold requirement of the second *Robertson* category.

The final question, under the *Robertson* framework, is whether the Eugene sidewalk vending ordinances are a law that expressly prohibits expression to achieve the forbidden effects or, instead, are a law that does not refer to expression at all. *State v. Plowman, supra,* 314 Or at 164. As this court wrote in *Robertson,* "[w]hen the proscribed means include speech or writing, * * * even a law written to focus on a forbidden effect * * * must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such 'overbreadth.' " 293 Or at 417-18. As noted, it is this characteristic that places a law in the second *Robertson* category. If, on the other hand, the law does not refer to expression at all, then the appropriate inquiry is whether the law could be constitutionally applied to the defendant's specific act or acts of expression. That "as applied" inquiry arises out of the third *Robertson* category.

The ordinances here do not fit within the second *Robertson* category. Neither Eugene Code section 4.860(d) nor Eugene Code section 3.338(e), whether read alone or together, "expressly prohibits expression to achieve [certain forbidden] * * * effects." *See State v. Plowman, supra,* 314 Or at 164 (citing *State v. Robertson, supra,* 293 Or at 417-18). The ordinances do not, by their terms, purport to proscribe speech or writing as a means to avoid a forbidden effect. Analysis for overbreadth under the second *Robertson* category is inappropriate. This brings us to the inquiry whether the ordinances as applied impermissibly burden protected expression.

When a law is challenged "as applied" under the third *Robertson* category, the question is whether the law was applied so that it did, in fact, reach privileged communication. *State v. Robertson, supra,* 293 Or at 417. Under that approach, the question in *these* cases is whether application of the pertinent provisions of the Eugene Code by the City of Eugene has limited the sale of defendant's joke books in a manner that impermissibly burdens his right of free speech guaranteed by Article I, section 8. We conclude that it has.

■     It may be that the city could, within its legitimate powers and without violating Article I, section 8, ban *all* sidewalk vending, including the sale of expressive material.[11] It also may be that the city could permit the sale only of certain narrowly drawn categories of goods, where a special public need for such goods could be shown. On those points, we express no opinion.[12] So long as the city chooses to make its sidewalks available for *some* general commercial activity, however, it may not treat a vendor of expressive material more restrictively than vendors of other merchandise — at least, not without being able to offer some explanation as to how the sale of the other material meets a special need or how the sale of the expressive material in question gives rise to special problems reasonably justifying the regulation of the vendor of expressive material differently and more stringently than other vendors. No such explanation has been made in these cases.[13] Indeed, beyond the mathematics of the situation, there does not appear to be any rational basis for the burden that the city has chosen to place on defendant's expressive activity. In the absence of such a basis, Article I, section 8, requires that defendant be given the same opportunity for the public sale of his expressive material goods that

----

[11] Certainly, the city's interests in reducing congestion, promoting business development, lessening unfair competition, and minimizing the city's liability are legitimate interests that the city has the right and the power to advance.

[12] It is indisputable that a city may enact reasonable regulations to further its legitimate interest in maintaining public health, safety, and welfare. *See City of Astoria v. Nothwang*, 221 Or 452, 460, 351 P2d 688 (1960) (recognizing that city has power to enact police regulations to promote public health and safety); *Cove Lodge v. Harris*, 134 Or 566, 572, 294 P 355 (1930) ("The right of a municipality to exercise the [police] power to preserve the health, to promote the morals and to promote the safety of its citizens has long been settled by repeated adjudications."); *cf. State v. Laundy*, 103 Or 443, 458, 204 P 958, 206 P 290 (1922) ("The possession and enjoyment of all rights are subject to such reasonable conditions as the governing authority may deem essential to the safety, peace and welfare of the general public"). However, regulations that limit the dissemination of expressive material must be drawn and applied with care, in order to avoid unreasonably impinging on the right of free speech and expression guaranteed by Article I, section 8.

[13] The dissenting opinion in the Court of Appeals noted that "the activity of selling of books in the middle of the street or on the sidewalk is not the same activity as the selling of the excepted commodities and may create different hazards for the public." *City of Eugene v. Miller, supra*, 119 Or App at 305 (Edmonds, J., dissenting). We do not dispute the assertion that the activities are "not the same." That fact proves nothing, however. The city has not identified any specific hazard created by the sale of expressive material that justifies the city in treating a vendor of that material more restrictively than vendors of food, beverages, flowers, and balloons.

is given to vendors of other products. As applied, the ordinance under which defendant was convicted unconstitutionally denied defendant that opportunity. Defendant's convictions properly were reversed.[14]

The decision of the Court of Appeals is affirmed on other grounds. The judgments of conviction are reversed.

**UNIS, J.,** specially concurring.

I agree with the outcome reached by the majority, but I cannot join in the majority's analysis. I write separately to express my concerns regarding a number of issues presented by this case that the majority fails to address, much less resolve.

The majority analyzes this case under the "framework" announced by this court in *State v. Plowman,* 314 Or 157, 838 P2d 558 (1992), *cert den* ____ US ____, 113 S Ct 2967, 125 L Ed 2d 666 (1993). In *Plowman,* this court recast the principles stated in *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982), into a methodology that seeks to categorize a law into one of three types: (1) laws directed at speech *per se*; (2) laws directed at speech-caused harm, *i.e.,* laws prohibiting speech that actually causes forbidden effects; and (3) laws directed at harm *per se, i.e.,* laws that do not refer to speech at all.[1] *State v. Plowman, supra,* 314 Or at 164.

The majority concludes that the Eugene ordinances at issue in this case are in the third *Plowman* category — laws directed at harm without referring to expression at all — and

---

[14] Because defendant's convictions are reversed on the ground that the *application* of the two ordinances to defendant's particular activity is constitutionally impermissible, the ordinances, had they not been superceded by amendment, would have remained valid and enforceable in other contexts.

[1] While I have no fundamental disagreement with the categorical approach of *State v. Plowman,* 314 Or 157, 838 P2d 558 (1992), *cert den* ____ US ____, 113 S Ct 2967, 125 L Ed 2d 666 (1993), that approach does appear to have certain limitations. An alternate method of analysis applying the principles stated in *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982), that leads to the same conclusions was set forth in *In re Fadeley,* 310 Or 548, 574-78, 802 P2d 31 (1990) (Unis, J., concurring in part, dissenting in part) (cited in *Moser v. Frohnmayer,* 315 Or 372, 375 n 1, 379, 380, 845 P2d 1284 (1993)). In my view, that method of analysis to determine whether an enactment is constitutional under Article I, section 8, of the Oregon Constitution is more complete than the analysis in *State v. Plowman, supra.* Nevertheless, since the majority has decided this case under the categorical approach of *Plowman,* I will confine my discussion to the application of that approach.

finds the ordinances unconstitutional as applied to defendant's distribution of joke books. In engaging in its analysis, the majority assumes, *arguendo*, that no part of the sales transaction regulated by the Eugene ordinances is protected expression under Article I, section 8, of the Oregon Constitution. I find this assumption unwarranted.

At the time relevant to this appeal, Eugene Code section 4.860 provided in part:

"Unless otherwise authorized in this code, no person shall:

"* * * * *

"(d) Set up or operate a vehicle, stand or place for the display or sale of merchandise, or sell, vend, or display for sale an article in the streets or on the sidewalks or in doorways or stairways of business houses, or in any other place where such activity causes congregation and congestion of people or vehicles on the streets or sidewalks."

Eugene Code section 3.336 provided:

"*Sidewalk Vending - License Required.* No person shall sell any goods or services within the corporate limits of the city except as provided by this code. As used in sections 3.336 to 3.342, 'sell,' or 'offer for sale,' includes but is not limited to the *solicitation*, exchange, transfer or delivery of goods or services." (Emphasis added.)

Although the Eugene ordinances by their terms restrict expression by specifically including "solicitation" as a proscribed activity, the majority assumes that the ordinances do not restrain expression. That assumption flies in the face of the express text of the ordinances and leads the majority to employ an analysis that will create confusion regarding this court's Article I, section 8, jurisprudence.

When a law is sought to be enforced against a person engaged in expressive activity, he or she may challenge the constitutionality of the government's action under Article I, section 8, in at least two ways. First, the individual may challenge the facial validity of the law. *State v. Spencer*, 289 Or 225, 228, 611 P2d 1147 (1980). Second, even if the law is facially valid, the individual may challenge the application of the law to his or her expressive activity in the particular case. *Id.* This court's analysis under *State v. Plowman, supra*, 314

Or at 164, addresses only the first type of challenge — challenges to the facial validity of a law.

A facial challenge to the constitutionality of a law under Article I, section 8, is a claim that the law, as written, is "invalid in toto." *In re Fadeley*, 310 Or 548, 577 n 7, 802 P2d 31 (1990) (Unis, J., concurring in part, dissenting in part). Under *State v. Plowman, supra*, 314 Or at 164, if the challenged law *by its terms* focuses on restricting speech, the law is unconstitutional unless it falls within a historical exception.[2] A law that *by its terms* focuses on harm, but expressly proscribes speech as a means of causing that harm, is constitutional under Article I, section 8, unless it is incurably overbroad. A law that *by its terms* does not refer to expression at all is facially valid under Article I, section 8. A key to this analysis, therefore, is what the law *by its terms* proscribes.

In this case, the majority does not analyze what the terms of the Eugene ordinances proscribe. Rather, the majority *assumes* that the ordinances do not by their terms restrict expression. Given that assumption, it is a foregone conclusion that the ordinance will be classified in the third *Plowman* category. By assuming that the ordinances do not regulate expression, the majority assumes that they are facially valid under Article I, section 8.

Despite assuming that the ordinances are facially valid, the majority attempts to classify the Eugene ordinances under *Plowman* because "the ordinances have the *effect* of limiting the sale of expressive material such as defendant's books." 318 Or at 488 (emphasis added). The "effect" of a law in a particular case is *not* a consideration in determining the facial validity of a law under this court's Article I, section 8, analysis:

---

[2] This historical exception applies to laws where

"the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted then or in 1859 demonstrably were not intended to reach." *State v. Robertson, supra* n 1, 293 Or at 412.

In addition, an infringement on otherwise constitutionally protected speech may be constitutional under Article I, section 8, if the restriction can be justified under the historically-based "incompatibility exception." *In re Schenck*, 318 Or 402, 455-57, 870 P2d 185 (1994) (Unis, J., specially concurring in part, dissenting in part); *In re Fadeley*, 310 Or 548, 577, 802 P2d 31 (1990) (Unis, J. concurring in part, dissenting in part); *In re Lasswell*, 296 Or 121, 125, 673 P2d 855 (1983).

"[Article I, section 8,] is a prohibition on the legislative branch. It prohibits the legislature from enacting laws restraining the free expression of opinion or restricting the right to speak freely on any subject. If a law concerning free speech on its face violates this prohibition, it is unconstitutional; *it is not necessary to consider what the conduct is in the individual case.*" *State v. Spencer, supra,* 289 Or at 228 (emphasis added).

Thus, it is the *terms* of the law that are considered in a facial challenge, not the "effect" that the application of the law might have in a particular case. Under Article I, section 8, a law might be unconstitutionally *applied* to the facts of a particular case, but a law that does not on its face restrict expression is not *facially* unconstitutional because of the "effect" the law has in a particular case.

Having assumed that the ordinances are constitutional on their face, the majority proceeds to find that the ordinances were not constitutional "as applied" in this case. The majority fails to state what analysis it applies in reaching its conclusion, although it appears that the majority has stated an "impermissible burden" test. The majority does not specify the contours of this test, but it appears to involve an examination of whether there is a "rational basis" for the ordinance.

The majority also fails to apply its "impermissible burden" test to this case. The majority provides no discussion of the *facts* of *this case*, which are essential to an as-applied challenge, but rather speaks in abstract terms about the nature of the ordinances in question. In an as-applied challenge, the question is whether the law may be constitutionally applied to the defendant's actual expression on the facts of the case. How the law restricts the activity of *other* persons in *other* factual situations is irrelevant. Such an inquiry is relevant to an overbreadth analysis, not an as-applied analysis.[3] Thus, the fact that under the Eugene ordinances persons selling balloons are treated differently from persons

---

[3] Although overbreadth challenges and as-applied challenges are analytically similar, they are distinct. *See State v. Robertson, supra* n 1, 293 Or at 437-38 (recognizing analytical distinction between overbreadth analysis and case-by-case adjudication of constitutionality). Both types of constitutional challenges test the relationship between a governmental action and a valid legislative goal (*i.e.*, proscribing an actual identifiable effect or harm rather than the communication itself). The question in an overbreadth challenge is whether the *legislation* restricts free

selling books should have no bearing on an as-applied analysis.

In my view, the valid application of a facially valid law to constitutionally protected activity requires a demonstration that the specified harm was a highly likely effect of the protected activity. *See City of Portland v. Tidyman*, 306 Or 174, 188, 759 P2d 242 (1988) (stating principle); *In re Lasswell*, 296 Or 121, 673 P2d 855 (1983) (disciplinary rule could not be applied because the expressive activity involved did not create a "highly likely risk" that it would cause proscribed harm). In applying this analysis, the court must examine the facts of the particular case to assess whether the defendant's protected activity in fact created a highly likely risk that the specified harm was present or imminent.

Not only does the majority opinion create confusion, but it also avoids an important question raised by this case. The majority seems to suggest that any regulation on commercial activity might implicate Article I, section 8. 318 Or at 485. If the majority is holding that any regulation of commercial activity is a restriction on free expression, I disagree. The mere fact that a law regulates or proscribes selling does not cause that law *on its face* to restrain the free expression of opinion or the right to speak, write, or print freely on any subject whatever. Certainly, laws directed at commercial *speech* on their face restrict free expression, but many other laws are regulations of commercial *activity*, not speech. In *City of Portland v. Tidyman, supra*, 306 Or at 182, this court stated:

> "[T]he city could regulate the location of a business that sells other merchandise, 'adult' or otherwise, even if it purveys communicative materials, as long as selling such other merchandise is not permitted at the location. A grocery store gains no privilege against a zoning regulation by selling *The*

---

expression rights more than is necessary to achieve the concededly valid goal. *See id.* at 410 (stating that a claim of overbreadth asserts that "the terms of a law exceed constitutional boundaries, purporting to reach conduct protected by guarantees [in the constitution]"). By contrast, the question in an as-applied challenge is whether the *application* of the legislation "restrains" or "restricts" Article I, section 8, rights because that application does not in fact further the legislative goal in enacting the law. *See id.* at 417 (stating that an as-applied challenge asserts that "the statute could not be constitutionally applied to [the defendant's] particular words or expression, not that [the law] was drawn or enacted contrary to Article I, section 8").

*National Enquirer* and *Globe* at its check-out counter. * * * Even structures unquestionably devoted to constitutionally privileged purposes such as religion or free expression are not immune from regulations imposed for reasons other than the substance of their particular message. Many regulations are not impermissible laws 'restricting the right to speak, write, or print freely on any subject whatever,' although they can be impermissibly applied in individual cases."

This quoted passage implies that a regulation that is directed at commercial activity, rather than speech, is not necessarily a law that on its face restrains the free expression of opinion.

The analytical difficulty that results from the application of the categorical framework of *State v. Plowman, supra,* to this case leads me to question whether that framework is appropriate for resolving the issues involved in this case. The Eugene ordinances in question do not prohibit outright any activity. Instead, they regulate the location and manner of certain activity. The categorical framework set out in *State v. Plowman, supra,* developed in the context of cases involving outright prohibitions of certain activities. *See, e.g., State v. Henry,* 302 Or 510, 732 P2d 9 (1987) (law prohibiting "disseminating obscene material"); *State v. Moyle,* 299 Or 691, 705 P2d 740 (1985) (law prohibiting "harassment"); *State v. Robertson, supra* (law prohibiting "coercion"). In my view, a different analysis applies to *regulations* of activity, as opposed to *prohibitions* of such activity. Regulations of the location, time, or manner of activity are qualitatively different than outright prohibitions on activity, and they should be analyzed differently. Indeed, this court has recognized a distinction between laws that prohibit activity and laws that regulate the location, time, manner, intensity, or invasive effect of activity. In *City of Hillsboro v. Purcell,* 306 Or 547, 554, 761 P2d 510 (1988), this court stated:

"The relevant distinction is between outright prohibitions — either civil or criminal — on the one hand, and regulations that do not foreclose expression entirely but regulate when, where and how it can occur."

*See also Moser v. Frohnmayer,* 315 Or 372, 383-84, 845 P2d 1284 (1993) (Graber, J., concurring in part, specially concurring in part) (analyzing statute as a "selective manner restriction"). In this case, the majority recognizes that there is a

question whether the *Plowman* categorical framework should apply:

> "The question thus becomes whether the prohibition in [the relevant provisions of the Eugene Code] fits within the [*Plowman*] framework and, if so, where." 318 Or at 488.

The majority never answers the question of *whether* the *Plowman* framework applies, however, but merely proceeds to analyze this case under *Plowman*.

In my view, the principles articulated by this court in *City of Portland v. Tidyman, supra,* and *City of Hillsboro v. Purcell, supra,* provide the basis for resolving the issues presented in this case, rather than the categorical framework set forth in *State v. Plowman, supra.*[4]

It is not necessary to set forth a complete analysis of location, time, and manner regulations under Article I, section 8, to decide this case, however, because this case, in my view, is controlled by *City of Hillsboro v. Purcell, supra*. In *Purcell*, this court applied an overbreadth analysis to a city ordinance that regulated the location and manner of solicitation. Similarly, the Eugene ordinances in this case expressly regulate the location and manner of "solicitation." Thus, I would analyze the Eugene ordinances for overbreadth.

With four limited exceptions, the Eugene ordinances forbid all solicitation on the sidewalk for any purpose at any time. The ordinances are broad enough to preclude any person from soliciting financial support on the public sidewalks for any purpose through the sale of merchandise. Because the ordinances are not limited to the consequences they seek to regulate, they are overbroad. *City of Hillsboro v. Purcell, supra,* 306 Or at 556.

An overbroad law may nevertheless be facially constitutional under Article I, section 8, if the court can give the

---

[4] This court's opinions in *City of Portland v. Tidyman,* 306 Or 174, 759 P2d 242 (1988), and *City of Hillsboro v. Purcell,* 306 Or 547, 761 P2d 510 (1988), state many important principles regarding the Article I, section 8, implications of the regulation of the location, time, and manner of activity. Those cases left unanswered many questions regarding the proper analysis in this area, however. The majority has missed the present opportunity to expand on the principles stated by this court in *Tidyman* and *Purcell* and to further develop an analysis of time, location, and manner regulations under Article I, section 8. I am hopeful that when this court is presented with another opportunity to develop this area of law, it will do so.

law a narrow construction that limits the reach of the law to the constitutional confines intended by lawmakers. *See, e.g., State v. Moyle, supra,* 299 Or at 702-05 (applying narrowing construction of harassment statute). In this case, however, I am unable to discern the intended boundaries of the Eugene ordinances. I would hold the Eugene ordinances to be facially unconstitutional because they are incurably overbroad. *See City of Hillsboro v. Purcell, supra,* 306 Or at 556 (court unable to provide narrowing construction of ordinance prohibiting door-to-door solicitation).

Furthermore, even if I were to indulge the majority's assumption that the ordinances are facially constitutional, I would hold that defendant could not be prosecuted for his distribution of joke books because the city has not demonstrated that defendant's expressive activity, at the place and time that the citations were issued, in fact created a "highly likely" risk that the harms the city's licensing scheme was designed to address were present or imminent.

Fadeley, J., joins in this specially concurring opinion.