920 P.2d 154 (1996)
141 Or. App. 495
David FIDANQUE and Janet Arenz, Respondents,
v.
STATE of Oregon, By and Through the OREGON GOVERNMENT STANDARDS AND PRACTICES COMMISSION, Appellant.
94C-11492; CA A86332.
Court of Appeals of Oregon.
Argued and Submitted October 23, 1995.
Decided June 19, 1996.
*155 Rives Kistler, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.
Thomas M. Christ, Portland, argued the cause and filed the brief for respondents.
Before RIGGS, P.J., and LANDAU and LEESON, JJ.
LANDAU, Judge.
At issue in this case is the constitutionality of ORS 171.743, which requires compensated lobbyists to pay a $50 registration fee each biennium to the Oregon Government Standards and Practices Commission (the Commission) to fund the Commission's administration and enforcement of lobbyist registration and reporting laws. Plaintiffs contend that the fee requirement violates state and federal constitutional guarantees of freedom of expression; they do not challenge the constitutionality of the underlying registration and reporting requirements. The Commission argues that the fee requirement is a constitutional administrative fee that covers the costs of regulatory activities, the validity of which plaintiffs do not contest.
The trial court entered a judgment on the pleadings declaring that the statute violates Article I, sections 8 and 26, of the Oregon Constitution and directing the Commission to accept lobbyist registration materials without requiring the payment of any fees. The trial court did not reach plaintiffs' federal constitutional challenge. On appeal, the Commission argues that the trial court erred in concluding that ORS 171.743 violates the Oregon Constitution. Plaintiffs respond that the trial court did not err in so holding and that, in any event, the statute also violates the First Amendment to the United States Constitution.
For the reasons that follow, we hold that the statutory fee requirement does not violate Article I, sections 8 or 26, of the Oregon Constitution. We further hold that the fee requirement does not violate the First Amendment. Accordingly, we reverse the judgment of the trial court.
We begin by describing the statutory scheme at issue. In 1973, the Oregon Legislative Assembly found
"that to preserve and maintain the integrity of the legislative process, it is necessary that the identity, expenditures and activities of certain persons who engage in efforts to persuade members of the Legislative Assembly or the executive branch to take specific actions, either by direct communication to such officials or by solicitation *156 of others to engage in such efforts, be publicly and regularly disclosed."
ORS 171.730. To that end, the legislature enacted various lobbying regulations. Those regulations impose certain requirements on "lobbyists," defined as:
"(a) Any individual who agrees to provide personal services for money or any other consideration for the purpose of lobbying.
"(b) Any person not otherwise subject to paragraph (a) of this subsection who provides personal services as a representative of a corporation, association, organization or other group, for the purpose of lobbying.
"(c) Any public official who lobbies."
ORS 171.725(8). "Lobbying" means
"influencing, or attempting to influence, legislative action through oral or written communication with legislative officials, solicitation of others to influence or attempt to influence legislative action or attempting to obtain the good will of legislative officials."
ORS 171.725(7).
Under the lobbying regulations, certain lobbyists must register with the Commission by filing a statement containing specified information, including the lobbyist's name and address and the party represented. ORS 171.740. Not all lobbyists are required to register. For example, the registration requirement does not apply to:
"A person who spends not more than 24 hours during any calendar quarter lobbying, excluding travel time, and who does not spend an amount in excess of $100 lobbying during any calendar quarter excluding the cost of personal travel, meals and lodging."
ORS 171.735(4). However, once that monetary or time amount is exceeded, a "lobbyist" must register with the Commission, unless another exception applies. Id.; ORS 171.740 (providing exceptions for certain news media, certain legislative officials, certain uncompensated individuals, and certain government personnel).
In 1993, the legislature added ORS 171.743, which provides:
"(1) The Oregon Government Standards and Practices Commission shall impose and collect the following lobbyist registration fees:
"(a) For each person described in ORS 171.725(8) and registered with the commission, $50.
"(b) Notwithstanding paragraph (a) of this subsection, for each person described in ORS 171.725(8)(b) and registered with the commission and who is not compensated for the person's services as a representative of a corporation, association, organization or other group, $0.
"(2) Fees are nonrefundable.
"(3) All moneys received by the commission under this section shall be paid into the General Fund in the State Treasury to the credit of the commission. Such moneys are continuously appropriated and shall be used only for the administration and enforcement of the powers and duties of the commission."
That provision became operative on January 1, 1994. Or Laws 1993, ch 714, § 6. Any "lobbyist" who is compensated and is required to register with the Commission must pay the fee. If such a lobbyist fails to do so, he or she may be fined a maximum of $1,000, ORS 171.992(1), plus "such sanctions as either house of the Legislative Assembly may prescribe." ORS 171.785.
Plaintiffs are paid lobbyists for the American Civil Liberties Union. In 1994, they submitted registration forms to the Commission, but omitted the registration fee required by ORS 171.743. The Commission wrote to plaintiffs requesting that they pay the registration fee. Plaintiffs declined, and the Commission did not accept their registration forms. Plaintiffs then initiated this action for declaratory and injunctive relief, asserting that the fee requirement of ORS 171.743 is unconstitutional. The Commission answered, and both parties moved for judgment on the pleadings. The trial court granted plaintiffs' motion, denied the Commission's motion and entered judgment as we have described above. On appeal, the Commission contends that the trial court erred in *157 granting plaintiffs' motion and in denying the Commission's motion.
We begin with plaintiffs' state constitutional challenges, State v. Kennedy, 295 Or. 260, 262, 666 P.2d 1316 (1983), reviewing as a matter of law the trial court's conclusion that the fee requirement imposed by ORS 171.743 violates Article I, sections 8 and 26, of the Oregon Constitution.
Article I, section 8, provides:
"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."
The Supreme Court has developed a method of analyzing a statute to determine whether it violates Article I, section 8. Our initial task is to determine whether the challenged statute falls within any of three categories. Depending on the classification of the statute, a different analysis will apply. City of Eugene v. Miller, 318 Or. 480, 488, 871 P.2d 454 (1994); State v. Plowman, 314 Or. 157, 164, 838 P.2d 558 (1992), cert. den. 508 U.S. 974, 113 S.Ct. 2967, 125 L.Ed.2d 666 (1993); State v. Robertson, 293 Or. 402, 412, 649 P.2d 569 (1982).
In the first category are laws that target the content of speech or writing, laws "written in terms directed to the substance of any `opinion' or any `subject' of communication." Plowman, 314 Or. at 164, 838 P.2d 558 (quoting Robertson, 293 Or. at 412, 649 P.2d 569). Such laws violate Article I, section 8,
"unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach."
Plowman, 314 Or. at 164, 838 P.2d 558 (quoting Robertson, 293 Or. at 412, 649 P.2d 569).
In the second category are laws that prohibit expression as a means of targeting forbidden effects of that expression. Miller, 318 Or. at 488, 871 P.2d 454. Those laws are analyzed for overbreadth. Id.
In the third category are laws that focus on forbidden effects, but without referring to expression at all. Those laws are analyzed to determine whether they violate Article I, section 8, as applied to the particular words or other expression involved in each particular case. Id.
We begin by determining whether the fee requirement of ORS 171.743 is a first category statute that expressly focuses on the content of speech in a manner that falls within no recognized historical exception to the constitutional guarantee of free expression. Plaintiffs argue that the statute targets the content of speech, because it requires compensated lobbyists, statutorily defined as those who are paid to express the views of their clients to the legislature, ORS 171.725(7), to pay a fee for the privilege of engaging in that expressive activity as opposed to other types of expression. In other words, they argue, to the extent that the statute restricts speech that is directed at legislators about pending legislation, as opposed to all other types of speech, it is directed at the content of speech.
The Commission argues that the statute by its terms says nothing about speech in general or the content of speech in particular. According to the Commission, the statute only imposes a fee to pay the costs of a regulatory program, the validity of which plaintiffs do not contest. If the registration requirement itselfwhich indisputably imposes some burdens on compensated lobbyistsis valid, the Commission argues, there is no principled basis on which to invalidate the fee requirement.
We agree with the Commission. The statute requires the payment of a fee to cover the costs of the regulation of a profession. It is entirely indifferent to what those in the regulated profession say or write. Specifically, it does not target any particular positions on legislation. It does not restrict, in any fashion, the views that a compensated lobbyist may take on behalf of a client.
To be sure, although the statute does not target the particular views of lobbyists on pending legislation, it does, at least indirectly, *158 impose some restriction on those who desire to speak on the subject of pending legislation, as opposed to other subjects. Merely because legislation indirectly affects a subset of the entire universe of expression, however, does not mean that it is "written in terms directed to the substance of any `opinion' or any `subject' of communication." Id. As the Supreme Court explained in City of Portland v. Tidyman, 306 Or. 174, 182, 759 P.2d 242 (1988):
"Even * * * activities unquestionably devoted to constitutionally privileged purposes such as religion or free expression are not immune from regulations imposed for reasons other than the substance of their particular message."
That only makes sense; indeed, plaintiffs' proposed analysis leads to remarkably absurd results. If statutory restrictions are "content-based" merely because they affect anything less than the complete universe of expression, then permit fees for parades; bar dues for lawyers; registration fees for real estate brokers, securities salespersons and investment advisers; and business license fees for newspaper companies and book stores all would fall prey to the prohibition of Article I, section 8. All involve regulation of "subjects" of communication in the sense that they affect something less than all expression. Not even plaintiffs suggest that all, or even any, of those charges are unconstitutional. Yet such would seem to be the direct consequence of adopting their arguments in this case.
Plaintiffs' arguments are especially difficult to accept in the light of their concession that the lobbyist registration and reporting requirements are constitutional. If those requirements, which undeniably impose at least some burden on the expressive conduct of compensated lobbyists, do not constitute a restriction on the content of speech, we fail to understand by what principle we may decide that the fee requirement does constitute such a content-based restriction. In something of a non sequitur, plaintiffs respond that:
"It is one thing to require someone to identify themselves before speaking. It is quite another to require them to pay money to speak. The latter requirement is a much greater restraint on freedom of speech than the former."
The qualitative nature of the restriction on speech, however, is not germane to determining whether the challenged law targets the content of speech. Either it does or it does not. We conclude that ORS 171.743 does not focus on the content of speech and is not, therefore, subject to analysis under the first Robertson category.
We next address whether the fee requirement in ORS 171.743 fits within the second Robertson category of laws that focus on forbidden effects but expressly prohibit expression in the process. Plaintiff argues that, even assuming that the true focus of the fee requirement is the collection of funds to finance a regulatory program created to preserve the integrity of the legislative process, the fact remains that the statute unconstitutionally accomplishes that end by prohibiting political speech. The Commission responds that the statute is not a second category law, because it does not prohibit speech in order to accomplish its objectives; it merely imposes a $50 fee to fund a concededly constitutional regulatory program.
Again, we agree with the Commission. Plaintiffs' argument to the contrary is predicated on the assertion that the statute is directed at speech. As we already have concluded, however, the statute does not prohibit speech, either as a means of reaching a proscribed effect or otherwise.
That leaves the third Robertson category. Neither party makes any argument that the fee requirement in ORS 171.743 is or is not unconstitutional as applied. Accordingly, we do not address that question. We conclude that the fee requirement in ORS 171.743 does not violate the free speech guarantee of Article I, section 8, and we turn to plaintiffs' arguments that the statute violates Article I, section 26.
Article I, section 26, provides:
"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from *159 instructing their Representatives; nor from applying to the Legislature for redress of their grievances."
In this case, plaintiffs contend that the fee requirement in ORS 171.743 "restrain[s] * * * inhabitants of the State * * * from applying to the Legislature for redress" of their grievances. They assert what they characterize as an "absolutist" view of the provision. According to plaintiffs,
"[b]y its terms, that section forbids, without exception, any restraint on the right to petition the legislature, and a fee on that right is such a restraint."
The Commission contends that the guarantee of Article I, section 26, is coextensive with the guarantee of Article I, section 8, and, given that the statute does not violate the latter provision, it also does not violate the former.
The Supreme Court has not defined any particular analysis to determine whether Article I, section 26, has been violated. In some cases, as the Commission correctly observes, the court has conflated analysis under Article I, sections 8 and 26, into a single inquiry. In Deras v. Myers, 272 Or. 47, 67, 535 P.2d 541 (1975), for example, the court held that statutes limiting campaign expenditures violated both constitutional provisions. In reaching that conclusion, however, the court refrained from articulating a method of analysis under either provision. The Secretary of State, in defending the constitutionality of the statutes, had argued that the restrictions were merely incidental or nominal. The court assumed, without deciding, that such a weighing of constitutional and legislative interests can be indulged under Article I, sections 8 and 26. It then decided that, because the constitutional interests in free expression clearly outweigh any legislative interest in regulating campaign expenditures, the statutes violated both sections of the constitution. Id. at 54, 535 P.2d 541. Similarly, in State v. Laundy, 103 Or. 443, 462, 204 P. 958, 206 P. 290 (1922), the court concluded that statutory syndicalism prohibitions on advocating violence did not violate either Article I, section 8, or Article I, section 26. The court discussed the two provisions together, with the simple declaration that the framers of the state constitution would not have supposed that a statute prohibiting the assembly of individuals to encourage the commission of a crime would be unconstitutional. Id.
In other cases, the court has separately evaluated whether challenged statutes violated Article I, sections 8 and 26. In Huffman and Wright Logging Co. v. Wade, 317 Or. 445, 459-60, 857 P.2d 101 (1993), for example, the court held that imposing punitive damages for trespass onto private property for the purpose of protesting logging does not violate Article I, section 26. Unfortunately, the court did not describe any particular method of analysis; it simply declared that
"nothing in Article I, section 26, suggests that that right [to assemble peaceably] includes a right to disrupt possession of the private property of another, at least when, as here, the private property is not open to public use."
Id. at 459, 857 P.2d 101. Likewise, in Ladd v. Holmes, 40 Or. 167, 189, 66 P. 714 (1901), the court held that the Lockwood Act, which regulated the conduct of certain primary elections, did not violate Article I, section 26. Among other things, the Act prescribed a test for indicating party affiliation and the manner of electing committeemen, fixed their terms of office and specified their duties. The court evaluated the statute in the light of the prohibitions of Article I, section 26, but, once again without any analysis, the court concluded that the constitution did not prohibit the legislature from adopting "reasonable rules and regulations looking to the safeguarding" of the electoral process:
"In so doing, the right of the adherents of the respective parties to assemble and consult together for their common good is in no way impinged upon, and they may still advocate and promulgate political doctrines and principles without restriction, so that it is done in a peaceable manner, and does not tend to moral obliquity, the infraction of the law, or the destruction of the government itself."
Id. at 188, 66 P. 714 (citation omitted).
Although the foregoing cases do not describe the analysis that is to be applied in an *160 Article I, section 26, case, they do establish some baseline principles that assist us in evaluating the contentions of the parties. In particular, they strongly suggest that the "absolutist" view that plaintiffs propose is untenable. Although the language of Article I, section 26, is cast in unqualified terms "No law shall be passed * * * "by itself, that is not sufficient to support the construction plaintiffs suggest. The same language "No law shall be passed * * *"is contained in Article I, section 8, and the Supreme Court has never given that provision an absolutist construction. The court's decisions in Huffman, Laundy and Ladd bear out the point. If, as plaintiffs suggest, Article I, section 26, brooks no restraint whatsoever on the rights of assembly and petition, then those cases should have been decided differently. To the contrary, in each case, the court held that at least some restrictions on the right of assembly are constitutional. E.g., Huffman and Wright Logging Co., 317 Or. at 459-60, 857 P.2d 101. We reject, therefore, plaintiffs' suggestion that Article I, section 26, is violated in the face of any restraint on the rights of assembly and petition.
There remains, of course, the question of what types of restraint on the rights of assembly and petition are prohibited by Article I, section 26. There, too, the foregoing case law, particularly the Ladd decision, is helpful. In Ladd, the court upheld the legislature's right to enact "reasonable rules and regulations looking to the security and safeguarding" of the integrity of the electoral process. Ladd, 40 Or. at 188, 66 P. 714. Specifically, the court upheld statutory restrictions on the operation of political parties in primary elections against an Article I, section 26, challenge.
We perceive no meaningful distinction between the election restrictions involved in Ladd and the lobbyist registration and reporting requirements involved in this case. If those regulations pose no more restraint on the rights guaranteed in Article I, section 26, than those in Ladd, we are hard pressed to articulate a principled basis on which to distinguish a requirement that lobbyists pay a fee to cover the costs of those regulations. In short, although the cases may not provide a Robertson-like analysis for evaluating statutes under Article I, section 26, they do establish that the statute under challenge in this case does not violate that provision of the constitution. We turn, then, to plaintiffs' final argument, that the fee requirement of ORS 171.743 violates the free speech guarantee of the First Amendment.
Plaintiffs make two arguments. First, they contend that imposing a fee on lobbyists is permissible only if it is "nominal," and the fee at issue in this case is not "nominal." Second, they argue that, at the very least, such a fee constitutionally cannot exceed the cost of administering the registration program, and there remains a question of fact whether the fee required by ORS 174.743 exceeds the state's actual administration costs. The Commission responds that a fee need not be "nominal" in order to be constitutional, and that plaintiffs' argument that the fee exceeds the state's administrative costs need not be addressed because it was neither alleged in plaintiffs' complaint nor argued below. We agree with the Commission on both matters.
We first consider the argument that, to avoid violating the First Amendment, the fee required by ORS 171.743 must be "nominal." Three Supreme Court decisions are instructive. First, in Cox v. New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), the Court upheld as constitutional a statute that authorized up to a $300 fee for parading on public streets. The Court held that the fee was
"not a revenue tax, but one to meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed."
Id. at 577, 61 S.Ct. at 766. The Court held that "[t]here is nothing contrary to the Constitution in the charge of a fee limited" to those purposes. Id.
Next, in Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), the Court invalidated a flat license fee levied on the distributors of religious literature. Distinguishing Cox, the Court stated:

*161 "And the fee is not a nominal one, imposed as a regulatory measure and calculated to defray the expense of protecting those on the streets and at home against the abuses of solicitors."
Murdock, 319 U.S. at 116, 63 S.Ct. at 876.
Finally, in Forsyth County v. Nationalist Movement, 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992), the Court considered an ordinance that required permits and fees for parades, assemblies and other private activities on public property and that empowered the county administrator to adjust the fee amounts to meet the expenses incident to the maintenance of public order in connection with the licensed activity. After concluding that the ordinance was unconstitutional, the Court referred to the sentence in Murdock regarding the size of the tax at issue and said:

"This sentence does not mean that an invalid fee can be saved if it is nominal, or that only nominal charges are constitutionally permissible. It reflects merely one distinction between the facts in Murdock and those in Cox. The tax at issue in Murdock was invalid because it was unrelated to any legitimate state interest, not because it was of a particular size."
Forsyth County, 505 U.S. at 137, 112 S.Ct. at 2405 (emphasis supplied).
We conclude that, as to the First Amendment, the constitutionality of the fee requirement does not turn on whether the fee may be characterized as "nominal."
That leaves plaintiffs' assertion that there remain issues of fact as to whether the fee required in ORS 171.743 is greater than the actual costs of the registration program. We agree with the Commission that the argument was not raised below. Plaintiffs made no argument to the trial court that the Commission's motion for judgment on the pleadings should be denied because there remained questions of material fact as to any issue in this case. Their sole argument was that the Commission could spend the $50 registration fee on matters beyond the regulation of lobbyists, an argument that they do not pursue on appeal.
We conclude, therefore, that the trial court erred in granting plaintiffs' motion for judgment on the pleadings and in denying the Commission's motion.
Reversed.